WILLIAMS *against* THE HARTFORD AND NEW-HAVEN
RAIL-ROAD COMPANY.

| | |
|---|---|
| 13 | 397 |
| 68 | 412 |
| 13 | 397 |
| 69 | 439 |
| 13 | 397 |
| 73 | 509 |
| 13 | 397 |
| 75 | 243 |

Where the *Hartford and New-Haven Rail-road Company* designated the
centre line of their road through the plaintiff's land, but the width of the
road was not defined by the company, or approved by the commissioners, by
any act in writing and recorded, before the damages were assessed by the
freeholders appointed for that purpose ; it was held, that such assessment was
of no legal validity, and the company were properly restrained from using
the plaintiff's land for their purposes.

Where the appraisers, in *November*, 1838, when only the centre line of the
road had been designated by the company, and approved by the commis-
sioners, made an assessment of damages in writing, under their hands, and
returned it to the clerk of the court, by whom it was recorded ; in *September*
following, the company re-located the centre line, and staked out the road
six rods wide,—*i. e.* three rods in width on each side of such centre line ; in

*Hartford,*
June, 1840.

Williams
*v.*
H. and N. H.
Rail-road Co.

*August,* 1839, the commissioners appointed by the General Assembly, in *May* preceding, approved the width of the road thus laid out, and the appraisers first appointed then re-assessed the damages; it was held, 1. that such appointment of commissioners was constitutional and valid; 2. that the first appraisal, in 1838, was a void proceeding, and the appraisers did not thereby exhaust their powers.

Where the appraisers gave notice in writing of the time and place of appraisal, to the party interested, who resided within eighty rods of the place, and received the notice on the day previous to the time appointed, and instead of requesting delay, returned a written answer to the appraisers, protesting against their authority to act, and declaring that he should not appear; it was held, that such notice was sufficient in point of time.

Where the subject of appraisal was described in the notice, as land owned by the plaintiff, and of which the state of *Connecticut* were mortgagees, when in fact, the state were not mortgagees of all, but of a part of the land appraised; but the notice also referred, for further description, to a petition and the proceedings thereon, to which the plaintiff was a party, in which the boundaries of all the land to be appraised were defined with precision; it was held, that such notice was sufficient in point of form.

The appraisers, under the charter of this company, could not legally assess the damages, until it was ascertained, that the parties could not agree; but to evince this fact, no particular acts are to be done, or forms observed; nor is a formal negotiation necessary: any circumstances which conduce to shew, that the parties could not agree, are proper to be considered in the decision of the question.

THIS was a bill in chancery, to continue and render perpetual, a temporary injunction previously granted. On the hearing, on the bill and answer, before the superior court, at *Hartford, September* term, 1839, (*Waite,* J. presiding,) the following facts were found.

In *May* 1833, the defendants were constituted a corporation, for the purpose of constructing a rail-road between the cities of *Hartford* and *New-Haven,* with certain powers specified in their charter, (*a*) which is to be considered as part of the case. On the 19th of *August* 1836, the defendants having been duly organized under their charter, made a location in part, and afterwards, on the 30th of *August,* 1836, they made

(*a*) The clauses of the charter most material in this case, are recited *ante* 112, 3, *in notis,* except the proviso at the close of the 7th section, which is as follows:—" Provided that said rail-road shall not be worked upon or opened across the land of any person, until the damages assessed to such person shall have been paid, or secured to be paid, to his satisfaction; and that the said damages shall be paid within sixty days after the same shall have been finally determined."

a final survey and location of the centre line of a route for the construction of a rail-road from the *Pardee* lot, in the city of *New-Haven* to *Main* street, at or near its intersection with *Mulberry* street, in the city of *Hartford*, and caused such route to be designated and established, as the complete and final route of the rail-road. The location thus made, was, on the 1st of *September* 1836, approved and established, by *William H. Ellis, John Stewart* and *Nathaniel Stevens*, commissioners appointed by the General Assembly, after notice to the persons whose land or estate had been taken, to appear and make objections, and after hearing all such persons as appeared before them. The road passed over a part of the land of the plaintiff, described in his bill; which land, or some part thereof, was subject to a mortgage to the state of *Connecticut*.

Shortly before the centre line of said road was established, across the plaintiff's land, the defendants caused three lines to be surveyed across said land, each of them varying, in a greater or less degree, from the line finally established, in contemplation that one or the other might eventually be established as the line of the rail-road; and after said lines were so run, the defendants resolved them into one, the present line, corresponding in some parts with the others, and being an improvement upon them; and thereupon, the engineer of the defendants went to the plaintiff, and traced out to him upon a map the present line, and noted the depth of the cuttings, and the width and quantity of land required, stating to him that the width required was six rods. Afterwards, in *September*, 1838, the engineer, by direction of the president and agent of the company, went and re-located said centre line, in the same place, in conformity to a certain vote of the company; and at the same time, he staked out the road, through the plaintiff's land, six rods in width: *i. e.* the land of the plaintiff, so staked out, was of the width of six rods, through the whole length thereof, extending three rods in width, on each side of the centre line. One of the votes referred to was as follows. "*August* 21st, 1838. *Voted*, that Mr. *Hitchcock*, Mr. *Clark*, Mr. *Elliott*, Mr. *Putnam*, and Mr. *Goodwin*, or any three of them, be a committee, with authority to treat with owners of land, in the vicinity of *Hartford*, for such

*Hartford,*
June, 1840.

Williams
*v.*
H. and N. H.
Rail-road Co.

*Hartford,*
*June, 1840.*

*Williams*
*v.*
*H. and N. H.*
*Rail-road Co.*

land as may be wanted for the rail-road company, and to purchase the same ; and that the chief engineer be requested to cause the line in the vicinity to be staked out, without delay."

" *September* 6th, 1838. *Voted*, that the president and agent be directed to put on a sufficient force to have the *North* division of the road in preparation for letting, without delay."

Before the road was so established, *Nathaniel Goodwin*, claiming to act in behalf of the defendants, went to the plaintiff, and asked him his terms for each of the three routes first designated. This enquiry the plaintiff answered by letter, dated *July* 4th, 1836 ; which answer was not satisfactory to the company. After the present line was surveyed, and about ten days after the engineer's application to the plaintiff, he went with Mr. *Goodwin* to the plaintiff, and while at his house, exhibited to him a map, with the present route or line marked upon it. The plaintiff told them, that he was not then ready for terms, but wished to consult his son, *O. E. Williams.* Shortly afterwards, *O. E. Williams* handed to Mr. *Goodwin* a letter, in which he stated the terms at 15,375 dollars. This letter, however, was written by the son, in consequence of a personal application by Mr. *Goodwin* to him, and not in consequence of any instructions from the plaintiff.

Shortly before the meeting of the appraisers, in 1838, *Samuel J. Hitchcock*, Esq., the president of the company, wrote to the plaintiff a letter requesting terms, in which he stated, that the company would want of the plaintiff's land, about 1,150 feet length of line, and four rods in width, for the purpose of the rail-road. The court did not find that Mr. *Goodwin* was expressly authorized, by any vote of the company, to negotiate with the plaintiff or the state, or to contract for lands, for the uses and purposes of the company, or to agree upon the damages for land taken for such uses and purposes ; but still, he did, in sundry instances, so contract, and his contracts were approved by the company ; and *James Brewster*, Esq., former president and agent of the company, had executed and delivered to him a writing, in these words : " I hereby authorize *Nathaniel Goodwin*, Esq., of *Hartford*, to make such contracts for land, for and on account of the *Hartford and New-Haven Rail-road Company*, as he may deem

best, subject to the condition of the final location of said rail-road. *Hartford, June 17th*, 1836.

> *Hartford and N. H. R. R. Co.*
> by their Agent, *James Brewster.*"

The court did not find, that any attempt on the part of the company was ever made with the plaintiff, or the state of *Connecticut*, to agree upon damages, unless it is to be inferred from the facts aforesaid, and the plaintiff's answer to the petition of the company for the appointment of appraisers, and the finding of the court upon such petition and answer. In that petition, it was averred, that "said company, on the 15th of *September*, 1836, applied to the respondents, [the present plaintiff, and the state of *Connecticut*,] and endeavoured to agree with them upon the damages that would arise to them, by taking a portion of said land or estate to them belonging as aforesaid, whereon to construct said rail-road; but said company and said respondents have been unable to agree upon the amount of damages for said lands or estate so taken from them as aforesaid." The answer stated, that only a line for the centre of the road had been designated; but the width of the road had not been determined, before the meeting of the commissioners to approve of the location. (*b*) The court found the allegation in the petition true, and also the allegations in the answer true, but insufficient; and thereupon proceeded to appoint appraisers.

These appraisers, being judicious and disinterested freeholders, after being duly sworn, and having given due notice to all parties concerned of the time and place of meeting, met on the business of their appointment, at *Hartford*, on the 27th of *November*, 1838; and having carefully viewed and examined the plaintiff's land, and having had the centre line pointed out to them, and having been furnished with the quantity wanted by the company of the lands of the plaintiff, and having inquired into the extent of the damages, did, as the just damages done to the plaintiff, by the company, in taking said land for their rail-road, and for all injury thereby done, assess the sum of 1,650 dollars, over and above all benefit or advantage to the plaintiff, resulting from said rail-road; which

(*b*) Vide *ante* 111, 112.

assessment the appraisers made in writing, under their hands, and returned it to the clerk of the superior court, who thereupon recorded it.

Within sixty days after such assessment was so recorded, *viz.* on the 21st of *January*, 1839, the company caused the damages so assessed to be tendered to the plaintiff, which he neglected and refused to receive, and has so done, at all times since, although the company have at all times been ready and willing to pay the same. It did not appear, that at the time the appraisal was made, the width of the road across the plaintiff's land, had ever been designated, by any vote of the company, or the directors, or upon any of the records, either of the company, or directors, or in any other manner, except that the length of the centre line, throughout the whole length of the road, was duly entered upon the records of the company and directors; and the exterior lines of the road were staked out upon the ground, at the distance of three rods on each side of the centre line, which had been in all respects duly designated; and that the quantity of land so appraised, would be equal to three rods in width, and no more, on each side of the centre line across the plaintiff's land.

After the damages were so tendered to the plaintiff, the company, for the purpose of constructing the road, entered, at sundry times, by their agents, engineers and servants, workmen and teams, upon the land so claimed to have been taken of the plaintiff, and dug up some portion of the soil, and made sundry cuttings, embankments and excavations thereon, necessary to be done in the construction of their road, and still continue to use and occupy the same; these being the trespasses and injuries complained of in the plaintiff's bill.

Since the commencement of this suit, *viz.* on the 14th of *August*, 1839, the directors of the company, at a special meeting, by them then held, at their office, in the city of *New-Haven*, passed a vote, that " the location of said road, for the purpose aforesaid, of the width aforesaid, the whole length of said line, should be, and was thereby established, by said company, and approved by them;" and that " said board thereby confirmed and established the same."

In *May* 1839, *William H. Ellis, John Stewart*, and *Selah Strong*, not being stockholders, or in any wise interested in

the road, were, by a resolve of the General Assembly, appointed commissioners on said road ; and, after the passing of said vote by said directors, these commissioners, being duly qualified, after giving notice to the plaintiff, and the state of *Connecticut*, to appear before them, and make objections, did, on the 22d of *August*, 1839, approve the location so made and approved by said directors, as the line and way whereon to construct said road, and thereof made a certificate in writing, under their hands.   On the 23d of *August*, 1839, the freeholders previously appointed by the superior court, without any new or subsequent appointment, were again duly sworn, and after giving notice of the time and place of meeting to the plaintiff, and to the state of *Connecticut*, met on the business of their appointment.   The company appeared before them, and were fully heard ; the other parties not appearing.   The freeholders proceeded to view the premises, and to inquire into the extent of the damages to the plaintiff in taking said land, assessed the just damages done to the plaintiff and to the state, at the sum of 1,650 dollars to the plaintiff, and the sum of one dollar to the state, over and above all benefit or advantage to them respectively resulting from said road. This assessment was made in writing, and returned to the clerk of the superior court, by whom it was duly recorded.   The notice given by the appraisers to the plaintiff, was in writing, signed by them, bearing date the 22d of *August*, 1839, and was, on that day, served on the plaintiff and the state of *Connecticut*.   The land of the plaintiff, so taken by the company, is situated within eighty rods of his dwelling-house, which is within eighty rods of the *Westerly* line of the city of *Hartford*.   *Oliver E. Williams*, the plaintiff's son, an attorney and counsellor at law, then and still residing in said dwelling-house, was then and before, the agent and attorney of the plaintiff, and was authorized to make, and did make, a written communication to the appraisers, dated the 22d of *August*, stating that he had that afternoon received their notice, but protesting against their authority to act as appraisers, and declaring that he should not appear before them.   The subject of appraisal was described in the notice, as land owned by the plaintiff, and to which the state of *Connecticut* are mortgagees, " as by the petition of said company against said *Williams*, and said state of *Connecticut*, dated the 15th day of

*Hartford,*
June, 1840.

Williams
*v.*
H. and N. H.
Rail-road Co.

*Hartford,*
*June, 1840.*

*Williams*
*v.*
*H. and N. H.*
*Rail-road Co,*

*September,* 1836, on the files of said court, and by the order and decree of said court, and by the subsequent proceedings of the directors and agents of said company, and of the commissioners, will more fully appear."

The damages assessed were respectively tendered to the plaintiff, and paid to the state, which the plaintiff refused to receive. The road, in respect to which these damages were assessed, covers and embraces all that part of the land of the plaintiff, described in his bill, upon which the injuries complained of have been done or committed.

The case was reserved for this Court, on the question, what order or decree should be passed.

*Toucey* and *Parsons,* for the plaintiff, contended, 1. That the road was never approved by the legal commissioners. The commissioners originally appointed, alone could legally act. The subsequent appointments were void.

2. That there was never any attempt of the defendants to agree with the plaintiff, upon the damages. This was indispensable, and the foundation of all subsequent proceedings. *The King* v. *Bagshaw,* 7 *Term Rep.* 363. *Gilbert* v. *The Columbia Turnpike Company,* 3 *Johns. Ca.* 107. *The People ex rel. Macey* & al. v. *Hillsdale and Chatham Turnpike Company,* 2 *Johns. Rep.* 190. *City of New-York* v. *The Manhattan Company,* 1 *Caines,* 507. 13 *Conn. Rep.* 117. 9 *Wend.* 351. *Hinckley* & al. v. *Town of Lee.* 15 *Pick.* 447.

3. That the last appraisal was void, because the appraisers acted after their powers were at an end. They had previously done the very act required by the charter. Their doings were returned to the clerk and recorded, and by charter, had the effect of a judgment, and execution could issue. Their acts were of a *judicial* nature, and their powers were exhausted. *Porter* v. *Bean,* 1 *N. H. Rep.* 362. *Ebersol* v. *Krug* & ux. 3 *Binn.* 528. *Post* v. *Sweet,* 8 *Serg. & Rawle,* 391. Ex parte *Randolph,* 9 *Pet.* 12. *Henfree* v. *Bromley,* 6 *East* 309. *Irvine* v. *Elnon,* 8 *East* 54. *Woodbury* v. *Northy,* 3 *Greenl.* 85. *Martin* v. *O'Neal,* 2 *Little* 54. *The Hartford and Dedham Turnpike Corporation* v. *Baker,* 17 *Pick.* 432. *Griffin* v. *House,* 18 *Johns. Rep.* 397. *The State* v. *The Norwalk and Danbury Turnpike Company,*

10 *Conn. Rep.* 157. *Turnpike Society* v. *Hosmer*, 12 *Conn. Rep.* 361. *West-Boston Bridge* v. *Middlesex County Commissioners*, 10 *Pick.* 270. *Mendon* v. *The County of Worcester*, 10 *Pick.* 235. *Waterbury* v. *Darien*, 9 *Conn. Rep.* 252. *Hart* & al v. *James*, 1 *Dal.* 355. *Shaw* v. *Pearce*, 4 *Binn.* 485. *Bill* v. *Pratt*, 5 *Conn. Rep.* 123. *Williams* v. *Cable*, 7 *Conn. Rep.* 119. *Kellogg* v. *Wadhams*, 9 *Conn. Rep.* 202. *Deal* & al. v. *McCormick*, 3 *Serg. & R.* 343. *Smith* v. *Fultz*, 4 *Serg. & R.* 473. *Healey* v. *Moul* & al. 5 *Serg. & R.* 181. Lessee of *Evans* v. *Narcong*, 2 *Binn.* 55. Lessee of *Drinker* v. *Holliday*, 2 *Yeates* 89.

4. That the notice from the appraisers to the plaintiff was insufficient; first, because the time was too short; secondly, because the land was not described correctly.

*Hungerford* and *Baldwin*, for the defendants, contended, 1. That the appointment of the commissioners by the General Assembly, in *May* 1829, was valid, and they were capable of acting. The charter requires an approval by commissioners to be appointed by the General Assembly; and six years are allowed for finishing the road. The commissioners first appointed were appointed for a year only. But if no commissioners could afterwards be appointed, and the road was not laid out and established in one year, it could never be done.

2. That the appraisers, at the time they were last called out, were not *functi officio,* and the appraisal made by them was valid. If it was necessary to designate the width of the road before the appraisers were called out, it was a condition precedent, and not being complied with, they had no jurisdiction. *Buonaparte* v. *Camden and Amboy Rail-road Company*, 1 *Bald.* 220. *Bloodgood* v. *Mohawk and Hudson Rail-road Company.* 18 *Wend.* 9. The first appraisal was, therefore, simply void; and it can have no effect whatever upon the subsequent appraisal. *Starr* v. *Scott*, 8 *Conn. Rep.* 480. *English* & al. v. *Smith* & al. 13 *Conn. Rep.* 221. *Cuyler* v. *Trustees of Rochester*, 12 *Wend.* 165. *The Commonwealth* v. *The County Commissioners*, 5 *Binn.* 534. If the appraisers had not made a valid appraisal, they had not done their duty, and there was no reason why they should not still do it. [The counsel then proceeded to answer the

authorities cited on the other side, commenting on them sep-
arately.]

3. That the injunction ought not to be continued, for want
of an attempt to agree upon the damages. In the first place,
there was all that was necessary, through the medium of Mr.
*Goodwin.* Secondly, if otherwise, it is shewn by the finding
of the court on the petition of the company; it being dis-
tinctly alleged in the petition, that they could not agree, and
this being found true. Thirdly, the want of such attempt
was *waived,* by the then defendant, as he put his defence
upon totally different ground. *Baldwin* v. *Caulkins,* 10
*Wend.* 167. *Windsor* v. *Field,* 1 *Conn. Rep.* 279. *The
King* v. *Bagshaw,* 7 *Term Rep.* 359. *Mayor &c. of New-
York* v. *Manhattan Company,* 1 *Caines* 507. *Gilbert* v. *Co-
lumbia Turnpike Company,* 3 *Johns. Ca.* 107. *Orange* v.
*Sudbury,* 10 *Pick.* 22.

SHERMAN, J. In the case now submitted to our conside-
ration, we will enquire, first, whether this injunction was
properly granted; and secondly, if it was, whether such mea-
sures have been since adopted, by the defendants, that it ought
to be dissolved.

1. The plaintiff claims, that the road was never laid out,
in the manner prescribed by the charter; and that the ap-
praisal of damages was wholly void. These allegations
were found to be true, and were the grounds on which the
injunction was granted. It is now found, upon proof not
presented to the judge who granted the injunction, that the
centre line laid by the directors was approved by the com-
missioners, and recorded in the books of the company. That
this should appear on record somewhere, was indispensable,
that the public and the parties might all resort to it, and that
its location might be preserved with certainty. It is now
shewn, that the centre line was laid and established by a due
observance of all the requisites of the charter. Still, how-
ever, the width of the road was not defined, by any recorded
or even written act of the company, or the directors. There
was, therefore, no road or way in existence, which could be
appraised by the freeholders. Consequently, the damages
were assessed and tendered to the plaintiff, before there was
any subject of assessment. Until the acts necessary to fix

the width of the road were unalterably executed, an assessment of damages must be merely hypothetical, and of no legal validity. That assessment was made on the 27th of *November*, 1838. The company had not then acted on the question, how wide the road should be. There was not a rod of earth appropriated to their use ; the centre line only had been laid.

The votes of the company of *August* 21st, and *September* 6th, 1838, on which the defendants rely, do not purport to give authority to establish the width of the way. The first gives certain persons power " to treat with owners of land in the vicinity of *Hartford*, for the rail-road company, and to purchase the same, and to authorize the chief engineer to stake out the course of the *line* in that vicinity." Nothing is said of the *width* of the road. The other directs the president and agent " to put on sufficient force " to have the *North* division in preparation for letting, without delay. What was meant by this, does not very distinctly appear ; but nothing can be further from its import than designating the width of the way. Equally irrelevant to this point, is the authority given by the agent, in his letter of *June* 17th, 1836, addressed to Mr. *Goodwin*, to make contracts for land, " subject to the conditions" of the final location of the road. Had any authority to establish the width of the road been conferred, it would be of no avail, unless carried into execution. That could not be done, until the width was defined, approved by the commissioners, and recorded on the books of the company.

The information given to the appraisers of the "quantity of land *wanted* by the company," however definitely that quantity might be specified, and the width given, would be equally inoperative in regard to the establishment of the width of the road. Neither these, nor any other facts in the finding of the court, which have been relied on, tend to shew, that the width of the road was established, when the first assessment was made ; admitting that it could be done, without the approbation of the commissioners. The authority given to the company " to lay out their road not exceeding six rods wide," had never been exercised ; and the mere establishment of the centre line, has been justly considered, in the discussion of the case, and in the practical operations of

*Hartford,*
*June, 1840.*

Williams
*v.*
H. and N. H.
Rail-road Co.

the company, as effecting nothing more than its language imports. Considering the great importance of protecting private rights, by requiring a strict observance of the terms on which private property may be taken for public use, and the very defective measures which had been attempted for the establishment of the width of this road, we think the company were justly enjoined against further prosecuting their works under the pretended title which they claimed.

2. But since the injunction was granted, *viz.* on the 22d of *August,* 1839, the commissioners, who were appointed at the preceding session of the legislature, approved the width of the road, as then laid out by the directors and recorded ; and it is admitted, that it thereby became established in conformity with the charter, and the requirements of law, if they had power to perform that service. The road being thus defined, the freeholders appointed in 1836, who made the first assessment, appraised the damages of the plaintiff, on the 23d of *August,* 1839, at 1,650 dollars ; and the amount has since been tendered and refused ; and the enquiry is now presented, whether, on the ground of these proceedings, the injunction shall be dissolved.

Several questions are raised by the plaintiff, as to the validity of this location of the road, and the last appraisal of damages. That the company, the commissioners, and the appraisers, have at last done, in point of form, all the acts required by the charter, is not denied ; but the plaintiff still insists, that the injunction should be continued, for the following reasons : First, that the commissioners who approved the width of the road, were not constitutionally appointed, by the legislature. Secondly, that the notice given to the plaintiff, by the appraisers, was insufficient in point of time, and in regard to the property to be appraised. Thirdly, that no appraisal could be made, unless the parties previously disagreed as to the amount of damages ; and that there was no sufficient proof of any such disagreement anterior to the last appraisal. Lastly, that the appraisers had previously exhausted their powers, by the assessment which they made on the 27th of *November,* 1838, and returned to the clerk of the superior court, whereby they became *functi officiis,* so that their last appraisal was void.

1. The first objection is professedly grounded on the princi-

ple that the appointment of commissioners by the legislature, after the charter was granted in 1833, was a violation of the rights of the company; no power to alter the original grant having been preserved. But a board of commissioners, to act as impartial judges between the company, on the one part, and the public and individuals on the other, was indispensable, and their appointment was not vested in the company. The nature of their duties required that they should, from time to time, be appointed by the legislature, and be exempt from any other influence or controul. This power remains absolute and discretionary. It is not varied, or impaired, by any clause in the charter.

*Hartford,*
June, 1840.

Williams
*v.*
H. and N. H.
Rail-road Co.

2. It is next insisted, that the notice given by the appraisers to the plaintiff, to attend upon the last appraisal, was insufficient in regard to time, and too indefinite as to the subject of appraisal. It is not stated, that the plaintiff was absent from home, or unable to appear. His house was within eighty rods of the place. He received the notice the day previous to the time appointed. He requested no delay, which he easily might, had it been necessary; and a compliance with such a request, if reasonable, may be justly presumed. On the contrary, he sent the appraisers a written notice, which was served by an indifferent person, and is now on file, that he did not acknowledge their authority, and should not appear.

In regard to the subject of appraisal, the notice to the plaintiff describes it as land owned by him, " and of which the said state of *Connecticut* are mortgagees." But the state are not mortgagees of *all*, but of a *part* only of the land appraised. The notice, however, gives this further description: " as by the petition of said company against said *Williams,* and said state of *Connecticut,* dated the 15th day of *September,* 1836, on the files of said court, and by the order and decree of said court upon said petition, and by the subsequent proceedings of the directors and agents of said company, and of the commissioners, will more fully appear." To that petition, which was served by copy, on the day of its date, Mr. *Williams* appeared as a party, and it is still on file. It defines the boundaries of all the land to be appraised, with precision. For these reasons, we consider the objections to the notice given by the appraisers, as insufficient.

*Hartford,*
*June, 1840.*

*Williams*
*v.*
*H. and N. H.*
*Rail-road Co.*

3. It is justly insisted, that the appraisers could not legally estimate the damages of the plaintiff, until it was ascertained that the parties could not agree.   In some of the cases cited, particular forms of dissent were prescribed, as preliminary to an assessment.   In *The King* v. *Bagshaw, 7 Term Rep.* 363. notice was to be given to the owners of the land, on which a way was to be laid, *twenty days* before the appraisal, and if they could not *then* agree, the assessment might be made.   But in this case, the charter merely provides, that " if the person or persons to whom damage may so arise, and said company *cannot agree* as to the amount of such damages," &c.   No particular acts are to be done, or forms to be observed.   The question whether they can or cannot agree, is to be decided upon evidence.   A formal negotiation is not necessary.   The inability of the parties to agree, is the only prerequisite ; and that may be shewn, by any testimony evincive of the fact.   The company had tendered Mr. *Williams* 1,650 dollars for this same land, and he had refused it.   This, although made in pursuance of a void appraisal, conduced no less to prove that the plaintiff would not accept that sum, as a compensation.   The application of the company for a new appraisal, is evidence of their conclusion to offer no more. On the question, whether the parties could agree, it is of little importance whether the plaintiff announced his determination before or after the width of the highway was legally established, if the precise subject was specified in the offer, and not altered, by the legal settlement of the boundaries.   But this and other circumstances, which conduce to prove that the parties could not agree, are evidence for the superior court to consider, whose province it is to decide questions of fact. We can only say, that they are such as may be justly weighed, in order to ascertain and decide whether the parties could agree or not.   If that court should be satisfied, on considering the evidence, that they could not agree, this objection to the appraisal, which is otherwise conclusive, will be removed.

4. It is a general rule of law, that where a board is designated for the performance of a particular act, without any general powers, as appraisers of land on an execution, a committee to lay out a highway, arbitrators or referees, by rule of court, or appointment of the parties, auditors in an action of

account, &c. their powers are exhausted, by one performance of the service ; and without a new delegation of authority, they cannot amend or revise their proceedings, or do the duty a second time.  The only question in this case, is, have they performed it once ? If they have, they are *functi officiis*, and can do nothing more, however erroneous or incorrect their proceedings may have been.   But if they have not, there is no ground for this objection.

*Hartford,*
June, 1840.

Williams
*v.*
H. and N. H.
Rail-road Co.

To enable the freeholders to make an appraisal, it was indispensably necessary that there should be something to appraise.   The subject matter, on which they were appointed to act, must be in existence.  If appraisers appointed under the laws of this state,  to aid in the levy of an execution on land, should make their valuation, and return it to the officer before he had taken any estate whatever, the appraisal would not be merely erroneous or incorrect, but utterly void ;  and not the less so, if the same land should be afterwards taken by the officer.   In such a void proceeding, they would not exercise their power, much less exhaust it ;  and would still be qualified to commence and perform the duties of their appointment.  We have endeavoured to show, that in this case, there was no land taken for the rail-road prior to the first appraisal in 1838.   That act of appraisal was not therefore done officially, but was void ;  and the same persons remained qualified to make the appraisal in 1839.

We would advise, that if the superior court shall find, upon the evidence, that the parties could not agree on the damages, the injunction should be dissolved; but otherwise, be continued in force, until the further order of the court.

In this opinion, CHURCH and WAITE, Js. concurred.

WILLIAMS, Ch. J. being related to one of the parties, and STORRS, J. being interested in the result, gave no opinion.

Injunction dissolved provisionally.