CONNECTICUT LIGHT AND POWER COMPANY *v.* DANIEL
B. COSTELLO ET AL.

THIM, RYAN, SHAPIRO, FITZGERALD and KLAU, Js.

Argued June 3—decided July 6, 1971

*William J. Butler,* with whom was *Omar H.
Shepard, Jr.,* for the appellants (defendants).

*Walter F. Torrance, Jr.,* for the appellee (plaintiff).

KLAU, J. The plaintiff brought a petition to the Superior Court for the appointment of a committee of three disinterested persons to assess just damages resulting from the condemnation of a right-of-way for a line for the transmission of electric current across land of the defendants Daniel B. Costello, Ann L. Costello, Patricia E. Leta and James V. Leta, hereinafter called the defendants, located in the town of Mansfield. In the petition the plaintiff alleged that it had determined that it was necessary and convenient for it to enter on and use an easement on part of this land, and that the parties had been unable to agree on the purchase price. The plaintiff also applied for an order of notice of the pendency of the petition by service on the defendants of a copy of the petition. The answer of the defendants admitted the ownership of the land but denied all the other allegations of the petition and by way of special defenses alleged (1) that the taking of the easement was not necessary and convenient but was unreasonable and in abuse of discretion, (2) that the plaintiff had failed to exhaust all reasonable efforts to obtain the easement by agreement and (3) that the plaintiff had not applied for or obtained approval from the selectmen of the town of Mansfield for the location of its proposed lines, nor had it applied for or obtained a special permit from the Mansfield planning and zoning commission for the utilization of the defendants' property for overhead or underground lines. The court rendered judgment appointing a committee to assess the damages. From this decision the defendants took their appeal.

The defendants' assignment of errors seeks the correction of the finding of facts and of the court's conclusions of law.

The finding, which is not subject to any correction which will advantage the defendants, is set forth as the claims of the defendants are discussed. The first claim of the defendants is that the court erred in holding that the plaintiff had, by eminent domain, the right to enter and take an easement over the defendants' land for the purpose of erecting poles, towers, conduits and fixtures thereon, deemed necessary in conducting electricity over and through the defendants' land.

The factual background for the necessity of acquiring this easement by the plaintiff as disclosed by the finding is as follows: The plaintiff is a public utility company which generates, transmits and distributes electric power pursuant to authority set forth in the General Statutes and the special acts of the state of Connecticut. In November, 1967, it commenced the acquisition of rights-of-way over approximately 210 properties between the town of Lebanon and the state of Rhode Island, a distance of approximately 36.7 miles, for the purpose of constructing transmission lines to interconnect the plaintiff's electrical system, from its Card Street substation, in Lebanon, with other electric systems in New England, at Medway, Massachusetts. The plaintiff anticipated the construction of a public utility commission-approved 345,000-volt transmission line on the right-of-way, to be completed in the fall of 1970 and anticipates construction of a second 345,000-volt transmission line on the right-of-way in 1978 or 1979. In addition, the plaintiff anticipates the construction of a 115,000-volt transmission line on the right-of-way to serve substations in the general area of the right-of-way. The right-of-way acquired for the entire distance of 36.7 miles was 300 feet wide and consisted, in part, of an existing 150-

foot right-of-way owned by the Hartford Electric Light Company, hereinafter referred to as HELCO.

The plaintiff, by resolution of its board of directors, determined that the taking of the easement over the defendants' land was necessary and convenient. Following a hearing on the application of the plaintiff, the public utilities commission found that the construction and operation of this 345-KV transmission line from the plaintiff's Card Street substation in Lebanon to the Rhode Island state line was necessary to insure the reliability of electric power in the state of Connecticut and the Big 11 New England power loop, from which the plaintiff and Connecticut will receive mutual benefits. The public utilities commission has given its approval for the construction of the entire transmission line, including that portion which crosses the defendants' land, except for approximately two miles through Mansfield Hollow, with respect to which a supplemental hearing would be subsequently held, the partial approval being given to permit the plaintiff to commence work so that the line would be completed in the fall of 1970. No portion of the right-of-way to be acquired from the defendants included the existing HELCO right-of-way.

The plaintiff's corporate existence stems from the charter granted to The Rocky River Power Company in 1905 by special act of the legislature. 14 Spec. Laws 860. In 1917, The Rocky River Power Company was authorized to acquire the property and franchises of The Housatonic Power Company and to change its name to The Connecticut Light and Power Company. 17 Spec. Laws 833. The Housatonic Power Company was organized by a special act of the legislature in 1893 and was given authority to generate, transmit and sell electricity through-

out the state except in towns where other companies had previously been authorized to sell electricity. 11 Spec. Laws 111 § 2. It is worthy of note that § 6 of the original charters of both companies are in substantially the same language. These companies in their charters were given power to build, erect and maintain dams in specific locations and under § 6 of their charters were empowered to enter on all such land or real estate as may be necessary and convenient to enter on and to use in the erection of dams and the setting back of water caused thereby, and in the construction and use of reservoirs, embankments, canals, aqueducts, and the setting back of water caused thereby, and in the construction of wheelpits, races, wasteweirs, culverts and bridges and as may be necessary and convenient in the location and construction of wheelpits, races, and wasteweirs and in developing and utilizing the power thereof, and in the alteration in the course of roads and highways; and the company shall be held to pay all damages that may arise to any person or persons, and if the person or persons to whom damages may so arise and the company cannot agree as to the amount of damages, the company may, after ten days' written notice to the adverse party, apply to the Superior Court of the county in which the real estate or other property damaged may be situated for the appointment of a committee. See 11 Spec. Laws 112 § 6; 14 Spec. Laws 862 § 6.

In 1899, § 6 of the 1893 charter of The Housatonic Power Company was amended, giving it the power to take real estate by condemnation for erecting and maintaining its poles, wires, conduits and fixtures, outside of the cities and villages, public grounds and highways for conducting electricity. 13 Spec. Laws 24 § 5.

Thus, in 1917, when The Rocky River Power Company, thereafter known as The Connecticut Light and Power Company, acquired the rights and franchises of The Housatonic Power Company, it had the right to condemn and take land deemed necessary and convenient for erecting towers, poles and other facilities for the transmission of electricity throughout the state, excepting that the right to take real estate did not extend to cities and villages, public grounds and highways. 13 Spec. Laws 24 § 5. In 1919, the charter of The Connecticut Light and Power Company was amended. 18 Spec. Laws 106. Sections 2 and 3 of that act provide as follows: "Sec. 2. The Connecticut Light and Power Company is authorized to build and maintain such dams, reservoirs, embankments, canals, conduits, aqueducts, wheel-pits, waste-weirs, races, roads, culverts, bridges, buildings, power houses, structures, plants and systems as may be convenient or necessary to fully and economically develop and utilize the rights, powers and privileges of said company. Sec. 3. Whenever it shall be necessary or convenient, in the exercise of any of the rights, powers and privileges of the company, for it to enter upon, take and use any lands, real estate and privileges, it shall have the power to enter upon, take and use all such lands, real estate and privileges in the same manner and subject to the terms and conditions all as provided in section six of the act incorporating The Rocky River Power Company, approved June 22, 1905."

In *Connecticut Light & Power Co.* v. *Bennett*, 107 Conn. 587, 141 A. 654, the court held that under the particular circumstances affecting the defendants' land the plaintiff had the right to enter thereon and take an easement by condemnation to erect

transmission lines, under the rights and privileges which it had acquired from The Housatonic Power Company, before the enactment of § 3 of the Special Acts of 1919. 18 Spec. Laws 107 § 3. The court further stated (p. 593) that "[s]ection 3 would have given to the plaintiff the right to take, *in invitum,* the land of the defendant had it not already possessed this power. . . . The grant of this power now vested in the plaintiff is, though general in terms, as express and clear as if the rights, powers and privileges had been specifically enumerated; it is more clear and definite than has sometimes been found in legislative enactments which we have held to sufficiently grant this right. *Water Commissioners* v. *Johnson,* 86 Conn. 151, 84 Atl. 727; *Water Commissioners* v. *Manchester,* 87 Conn. 193, 199, 87 Atl. 870; *State ex rel. New Haven & Derby R. Co.* v. *Railroad Commissioners,* 56 Conn. 308, 313, 15 Atl. 756."

In addition, the plaintiff has rights, powers and privileges stemming from § 16-246b of the General Statutes (Rev. to 1966), which embodies a grant sufficient to empower the plaintiff, enabled by § 3 of the 1919 Special Act (18 Spec. Laws 107 § 3) to follow the procedure in § 6 of the 1905 Special Act (14 Spec. Laws 862 § 6), to acquire rights "necessary or convenient for the purposes of its electric utility business." The term "utility facility" as defined in § 16-246a (c) "means an item of plant used or useful in the electric utility business, and shall include, but is not limited to, such items of plant as generating stations, transmission lines, office buildings and equipment and transportation equipment."

It is apparent that the plaintiff, by virtue of the provisions of the General Statutes and rights granted directly to it and to The Housatonic Power

Company, has the right, power and privilege to transmit and deliver electricity throughout the state.

The defendants claim that the plaintiff's power of condemnation is limited by § 3 of the 1919 Special Act (18 Spec. Laws 107 § 3), to the purposes set forth in § 6 of the Special Act of 1905 (14 Spec. Laws 860), the original act incorporating the plaintiff, which were confined to the development of the hydroelectric power of a dam or dams, across Rocky River in Litchfield and Fairfield counties, and thus the power of condemnation is not extended to transmission lines. That construction would be contrary to the express language of the Special Act of 1899 (13 Spec. Laws 24 § 5), giving The Housatonic Power Company the right to condemn land for the erection of transmission lines, with exceptions as indicated, and would be reducing to a nullity the clear and unambiguous language of § 3 of the 1919 Special Act (18 Spec. Laws 107 § 3).

With the absorption in 1917 of The Housatonic Power Company by The Rocky River Power Company (17 Spec. Laws 833 § 1), the procedure for condemning land contained in § 6 of the charter of The Housatonic Power Company was no longer required, and the only section setting forth the manner and procedure for condemnation to be followed by the plaintiff was that contained in § 6 of the 1905 charter of The Rocky River Power Company. Nothing was lost by this reference, since it was exactly the same manner and procedure for condemnation as was contained in the original charter of The Housatonic Power Company.

The phrase "in the same manner and subject to the terms and conditions" appearing in § 3 of the 1919 Special Act obviously refers to the procedural limitations, such as those pertaining to notice, the

court to which applications should be made, the number and qualifications of the committee, the filling of vacancies on the committee and other procedures, as set forth in § 6 of the 1905 Special Act, and does not limit the situations in which the power of condemnation could be exercised.

Section 3 of the 1919 Special Act (18 Spec. Laws 107 § 3), reinforced by § 16-246b of the General Statutes, gives the plaintiff power to condemn land for erecting transmission lines which are necessary and convenient for the transmission of electricity, and is not limited in its application by the 1899 amendment to the charter of The Housatonic Power Company. 13 Spec. Laws 24 § 5. See *Antman* v. *Connecticut Light & Power Co.,* 117 Conn. 230, 232, 167 A. 715.

The court concluded that Perkins Village, within which area in the town of Mansfield the defendants' land is located, is not a village. The finding indicates that Perkins Village is not an organized political subdivision, but a place in the town of Mansfield with some homes and stores. Whether or not Perkins Village is a village does not require a decision under the view we take, since the plaintiff has the power to transmit electricity without the limitations contained in the Special Act of 1899 (13 Spec. Laws 24), relating to the right of The Housatonic Power Company to condemn land for transmission lines except in cities and villages, public ground and highways.

The defendants assign as error the conclusion of the court that the plaintiff complied with the procedural requirements of § 6 of the Special Act of 1905 (14 Spec. Laws 862 § 6), so far as notice to the defendants is concerned. The finding discloses that the plaintiff failed to give ten days' written

notice to the defendants before the filing of its petition dated December 4, 1969, in the Superior Court.

The record, however, discloses that an order directing that notice be served on the defendants was made by the court *(Shea, J.)* on December 5, 1969, and return of such notice as disclosed by the file indicates that the notice was served on the defendants on December 20, 1969, well more than ten days prior to January 9, 1970, the hearing date ordered by the court after it had determined on what date the application should be heard.

The pertinent provisions of the Special Act of 1905 read as follows: "[S]aid company may, after ten days written notice to the adverse party, apply to the superior court of the county in which the real estate or other property to be taken or damaged may be situated, or to any judge of the superior court; and thereupon said court or judge shall appoint three disinterested citizens of this state as a committee to assess the amount of . . . damages." 14 Spec. Laws 860 § 6. No pleading raising this issue was filed in the trial court; Practice Book § 93; and the defendants entered their appearance and defended on the merits. The defendants have waived any right to object, even if the procedure followed by the plaintiff should be deemed to be insufficient. *Amato* v. *Campano,* 141 Conn. 247, 105 A.2d 185. To require that the plaintiff give a ten-day written notice that it intends to ask the court to appoint a committee, rather than a ten-day notice of the day on which the appointment of the committee will be considered, would seem to warp the purposes of the act and violate procedural due process. See *Matter of City of Rochester* v. *Holden,* 224 N.Y. 386, 392, 121 N.E. 102.

The defendants claim that the plaintiff had failed

to engage in meaningful negotiations with them to acquire the easement by agreement prior to the filing of the petition. The finding reveals that negotiations with the defendants extended from November, 1967, when the plaintiff's agent first contacted the defendants, to November 13, 1969, the last meeting between the plaintiff and the defendants prior to the commencement of condemnation proceedings. Several visits were made to the defendants by the plaintiff during 1968, during one of which the defendants were furnished with a photogrammetric (aerial) map showing the right-of-way across their land. In January, 1969, the plaintiff offered the defendants $20,000 plus a release of an existing right-of-way across their land and the conveyance to them of land of a third party which it had hoped to acquire. This offer was repeated at a four-hour meeting in February, 1969. The defendants, however, demanded $46,500 as the consideration for the easement. This demand was not based on any definite evaluation but was a "shot in the dark." In June, 1969, the plaintiff increased its offer to $24,000 but without the release of the easement and conveyance of the land previously offered, to which the defendants responded on June 17, 1969, with a demand of $123,800 for the right-of-way. At the meeting on November 13, 1969, the defendants' demand remained at $123,800. Thereafter, and before the petition was served on the defendants, the plaintiff raised its offer to $30,000, but the defendants neither accepted nor rejected the increased offer and their demand remained at $123,800 up to the time of service of the petition.

The defendants further claim that the plaintiff did not exhaust reasonable efforts to reach an agreement because they were not furnished with survey

maps, that they were unaware of the burden which the plaintiff proposed to place on the easement and that the plaintiff's appraiser did not take into consideration the concept of "severance damages." The court found that the line of location was physically on the ground in January or February, 1968, and in the spring of 1968 the defendants were furnished with a photogrammetric map. Due to the uncertainty as to the boundary lines between the defendants' land and the land of others, which cannot be attributed to the plaintiff, a survey map was delivered to the defendants in November, 1969, but this had no effect on the defendants' demand which remained at $123,800. The defendants also claim that they did not learn until after the petition for the taking was filed in court that the plaintiff intended to install an additional 345-KV transmission line in 1979 and contemplated a 150-KV transmission line within the 300-foot right-of-way sometime in the future and thus were not aware of the burden to be placed on their property. The finding does not indicate that the defendants were in any way misled by the proposed use to be made of the easement. The board of directors of the plaintiff had by resolution determined that the 300-foot easement was necessary and convenient for the purpose of erecting a 345-KV transmission line. The defendants have not attacked this determination nor do they assert any lack of good faith on the part of the plaintiff.

The wide disparity between the offer and the asking price indicated that the parties could not agree on the amount to be paid. The law, however, does not require the performance of a useless and futile act. *Darien* v. *Kavookjian*, 151 Conn. 659, 661, 202 A.2d 147; *Todd* v. *Austin*, 33 Conn. 87; *Wampler* v. *Trustees of Indiana University*, 241 Ind. 449, 172

N.E.2d 67, and note, 90 A.L.R.2d 211, 247 § 21. "It is sufficient if the negotiations proceed far enough to indicate that an agreement is impossible, and, where it is apparent that the parties cannot agree on the amount to be paid, a formal effort to agree is not necessary. . . . [W]here estimates of value entertained by petitioner and the owner differ so widely as to render it almost certain that an offer to purchase would be rejected, no further effort to agree is necessary." 29A C.J.S. 1004, 1005, Eminent Domain, § 224 (2). The question whether a "reasonable effort" had been made by the plaintiff to secure an agreement with the defendants as to the damages to be paid for the taking is a question of fact. See *West Hartford* v. *Talcott,* 138 Conn. 82, 91, 82 A.2d 351; *Williams* v. *Hartford & N.H.R. Co.,* 13 Conn. 397, 410. The conclusion of the court that the plaintiff had engaged in meaningful negotiations with the defendants and exhausted all reasonable efforts to obtain by agreement the easement it desired prior to the filing of this petition is amply supported by the finding.

The defendants assigned as error the conclusion of the court that the plaintiff was not legally required to apply for and obtain approval by the selectmen of the town of Mansfield and the Mansfield planning and zoning commission for the erection and construction of its proposed lines, poles and towers over the defendants' land.

The town of Mansfield has a combined planning and zoning commission established under § 8-4a of the General Statutes. In compliance with the authority granted it by § 8-2, the Mansfield planning and zoning commission has promulgated zoning regulations, together with the zoning map. The parties stipulated that the right-of-way which the plaintiff

seeks to take over the defendants' land is in a RA-40 zone, which is designated a rural agriculture district. Under article 3, § 3.23 (5), Use and Bulk Regulations, a special permit must be obtained from the commission, pursuant to article 5, § 5.1, Special Regulations, for the erection of radio, television, microwave and other utility towers, overhead and underground utility lines.

The plaintiff has not sought the approval of the board of selectmen nor applied for a special permit from the planning and zoning commission of the town of Mansfield for the location and erection of the transmission line over the defendants' land.

Both the plaintiff and the defendants agree that § 16-235 controls. That section (then Rev. 1949, § 5649) was interpreted by this court in *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 103 A.2d 535. The opening proviso of § 16-235 excepts from its operation the jurisdiction and direction over plants, apparatus and transmission lines conferred on the public utilities commission by § 16-243 (formerly Rev. 1949, § 5655) and the authority of the selectmen of any town over the placing and erection of transmission lines is subject to the provisions of § 16-234 (formerly Rev. 1949, § 5645). "These two enactments manifest a recognition by the legislature that the control of the plants, apparatus and transmission lines of a public service company is a matter of more than local concern and one which should be under the supervision of a commission with state-wide jurisdiction. The second enactment is significant also because it gave to the public utilities commission control not only of the structures and transmission lines of public service companies which are located in the public highway, but also of generating plants and other structures

which are situated on private property." *Jennings v. Connecticut Light & Power Co.*, supra, 660. The court further stated (p. 664): "In 1935, § 5646 [now § 16-235] took its present form. . . . In considering the language which was added, we will discuss certain portions of it seriatim. The language of the earlier revisions concerning the powers conferred upon local authorities was retained. This, read with what is . . . § 5645 [now § 16-234], gave the local authorities power with reference only to such structures as were located 'over, on or under any highway or public ground.'" Further amendments in 1935 concerned situations where a local zoning board was in existence. The specific holding of the court was that under § 16-235 the local zoning commission, acting not as such but rather as a special agency of the state, has the power to regulate and restrict the erection of only a steam plant, gas tank or holder, water tank or electric substation of any public service company, subject to the right of appeal to the public utilities commission. See *Jennings* v. *Connecticut Light & Power Co.*, supra, 668–69.

Accordingly, it is clear that § 16-235 confers no jurisdiction on the board of selectmen or the planning and zoning commission of the town of Mansfield to control in any manner the erection and placing of the plaintiff's transmission lines over or under the defendants' land. Exclusive jurisdiction over and direction of such lines erected on private property is in the public utilities commission by virtue of § 16-243. See *Jennings* v. *Connecticut Light & Power Co.*, supra, 663–64.

There is no error.

In this opinion the other judges concurred.