[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S APPLICATION FOR BILL OF COSTSAND/OR SANCTIONS
The plaintiff, Livio Vallera, instituted this action against the defendant, Denny's Restaurant, Inc., to recover damages for certain injuries he claims to have suffered when, while a patron in the defendant's restaurant, he was attacked and severely beaten by four other patrons of the restaurant who had been taunting and harassing him and his two female companions at their table. Claiming generally that restaurant personnel should have prevented this assault either by removing his assailants from the restaurant or controlling their behavior within the restaurant before the assault occurred, the plaintiff alleges, more particularly, that his resulting injuries and losses were proximately caused by the defendant's negligent failure to provide proper training and supervision for its employees and/or to provide adequate security for its late-night customers.
The defendant has denied each of the plaintiff's claims of negligence and pleaded as a special defense that the plaintiff negligently caused his own alleged injuries and losses by engaging in belligerent provocative behavior on the evening in question. In addition, having sought and been granted this Court's permission to cite in the CT Page 10354 plaintiff's alleged assailants as additional party defendants to this action, it has served them with its own Complaint, alleging that they negligently assaulted the plaintiff, and claiming, on that basis, that its own responsibility, if any, to pay damages for the plaintiff's alleged injuries and losses should be proportionately reduced.
On May 24, 1994, counsel for the plaintiff, the named defendant, and the four impleaded defendants began the three-day process of selecting a jury to hear and decide this case. Though the final alternate was selected on May 26, 1994, trial could not begin at once because every judge in the courthouse was occupied with another trial. By June 28, 1994 the date on which the case was finally reached for trial, four members of the original jury panel had become unable to continue with the case, necessitating additional voir dire and further delay. After one more day of voir dire, a full panel of jurors and alternates was once again assembled.
Trial began on July 7, 1994, after counsel and the Court had conferred at length about the probable flow of the trial and several of the legal and factual issues which would arise therein. After certain preliminary matters were discussed on the record, the jurors and alternates were sworn, and a limited preliminary charge was delivered by the Court, counsel were invited to make their opening statements.
The plaintiff's attorney, John Hanks, began his opening statement with a detailed description of the events inside the defendant's restaurant which he claimed to have produced and been a part of the alleged attack upon his client. Then, most unexpectedly, he announced to the jurors and alternates that in the aftermath of those events, all participants in them, including his client, had been arrested, but that all charges against his client had been "dismissed" by the prosecutor assigned to handle them. Shortly thereafter, Attorney Hanks concluded his opening statement without informing the jury whether or not the charges which had been filed against his client's alleged assailants had been fully prosecuted, and if so, with what results. CT Page 10355
Before defense counsel commenced her own opening statement, she asked to address the Court in the absence of the jury. After the jurors and alternates were removed from the courtroom, counsel moved the Court for a mistrial on the ground that Attorney Hanks' opening statement had inappropriately placed before the jury certain inadmissible and highly prejudicial information which no curative instructions could neutralize. In particular, defense counsel argued that the mere fact of any witness's arrest or prosecution was inadmissible in this case, and that as here presented by Attorney Hanks, it had given rise to two especially prejudicial inferences. First, it afforded the jurors an illicit basis upon which to discredit the plaintiff's alleged assailants as witnesses to prove that it was the plaintiff, not they, who had started the altercation in question. In Connecticut, a witness can only be impeached by his felony convictions, not by his mere arrest or prosecution for any crime, felony or misdemeanor. See C.G.S. § 52-145.
Second, by coupling this unlawful reference to the additional revelation that the plaintiff's own charges had been dismissed, it unlawfully bolstered the credibility of the plaintiff by suggesting that the prosecutor had chosen to accept his version of events rather than that of his alleged assailants. Public prosecutors are rightly understood by the public to be
 high public officer[s], representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. In discharging [their] most important duties, [they] deserve and receive
in peculiar degree the support of the court and the respect of the citizens of the county. By reason of [their] office, [they] usually exercise great influence upon jurors.
State v. Ferrone, 96 Conn. 160, 168 (1981). Thus when jurors are informed that a prosecutor, upon conducting an independent review of objective investigative information concerning an incident, has chosen to prosecute some but CT Page 10356 not all of those who took part in that incident, it is only natural for them to infer that those who have been prosecuted are more responsible for the incident, and less credible when they deny such responsibility, than those who have not been prosecuted.
Against this background, the Court inquired of counsel what had happened to the charges filed against the plaintiff's alleged assailants. If all such charges had been nolled or dismissed, then any prejudice which might otherwise have flowed from plaintiff's counsel's illicit suggestion that his client had received more favorable treatment from prosecutorial officials than his alleged assailants could have been alleviated simply by informing the jurors that all parties to the altercation had been treated alike.
When, however, the Court was informed that at least two of the plaintiff's alleged assailants had indeed been prosecuted, it became apparent that the only conceivable way to address the damage done by Mr. Hanks' remarks would be to deliver cautionary instructions to the jury. Concluding, to its great regret, that no such cautionary instruction could "unring the bell" which plaintiff's counsel had rung, the Court granted the defendant's motion for a mistrial.
Upon granting the defendant's motion, the Court accepted Mr. Hanks' apology for his inappropriate remarks and specifically noted for the record that it attributed those remarks to his youth and inexperience rather than to any desire on his part to subvert the trial by compromising its fundamental fairness. Even so, it expressly invited defense counsel to consider preparing and submitting a bill of costs for all the expenses the defendant needlessly incurred by reason of Mr. Hanks' conduct.
Pursuant to the Court's invitation, defense counsel promptly submitted a written Application for Bill of Costs and/or Sanctions, wherein it asked the Court to exercise its "inherent authority" to award the defendant costs in the amount of $3712.76 for expenses it had incurred from the first day of jury selection through the Court's declaration of a mistrial. CT Page 10357
In response to this application, the plaintiff, through counsel, has responded that the Court abused its discretion by declaring a mistrial, that the Court lacks the power to impose sanctions upon him in the absence of a particular rule of court or statute so authorizing, and that the defendant's request for costs is excessive. For the following reasons, the Court concludes that while the plaintiff's arguments in opposition to the imposition of costs and/or sanctions are without merit, this is not an appropriate case in which to impose them.
 I
Counsel's initial suggestion that the Court's declaration of a mistrial was an abuse of discretion is utterly unsupported in law or in fact. It is true, of course, that "[a] motion should not be granted unless it is apparent to the Court that because of some occurrence upon the trial a party cannot have a fair trial." State v.Ruiz, 171 Conn. 264, 274 (1926). However, it is well settled in Connecticut that a trial judge has wide discretion in passing on motions for mistrial[,]", State v.Savage, 161 Conn. 443, 449 (1971), principally because he or she is particularly well situated both to observe the prejudicial occurrence and to assess its likely impact on the jury. If, upon considering the nature of the improper conduct, the context in which it arose its resulting potential for prejudice, and the likely effectiveness of any reasonably available curative measures to alleviate it, the Court concludes that the party victimized by the improper conduct cannot receive a fair trial, then the Court has the power to declare a mistrial. Id.
In this case it would have been impossible for the jury to forget the opening remarks of counsel as to the arrest and prosecution of the plaintiff and his alleged assailants and/or the prosecutor's dismissal of the plaintiff's charges. This was no mere comment that some unidentified third party of unestablished veracity and integrity had accused the plaintiff's alleged assailants but not him. It was, as previously noted, the considered judgment of a respected public official, who had taken formal action based on that judgment in a court of law. Thereby left with the indelible impression that the prosecutor, who presumably had a reliable factual basis CT Page 10358 for making his decision, had already decided the issues before them in favor of the plaintiff, the jurors were irreparably tainted by counsel's conduct.
The Court, moreover, did not declare a mistrial without reflection. Instead, it carefully considered the possible effectiveness of curative instructions after first determining that the jurors could not honestly be informed that none of the plaintiff's alleged assailants had been prosecuted. In sum, the Court's conclusion that the only way to preserve the defendant's right to a fair trial was to declare a mistrial was as reasonable as it was regrettable.
 II
The plaintiff's second claim is that in the absence of explicit statutory or Practice Book authority, the Court lacks the power to impose sanctions upon him by reason of his lawyer's conduct in his opening statement. For the following reasons, this Court must disagree.
This very question, in fact, was answered by the Appellate Court in Fattibene v. Kealey, 18 Conn. App. 344,359 (1989). There the Court was called upon to decide whether or not the trial court had committed reversible error by imposing sanctions on a plaintiff who was claimed to have "advanced certain procedural claims in bad faith, mischaracterized certain rulings by the referees, misstated evidence, pervasively disregarded the rules of evidence, attempted to prejudice the referee and the court against the defendant, made inappropriate references to the referee," and otherwise to have engaged in unnecessary and repetitious pleading "indicative of an attempt to harass and delay." Id. at 358. After rejecting the appellee's suggestion that such sanctions were available under Practice Book § 111, the Court refocussed its inquiry on the
 question . . . whether the court has the inherent authority to impose sanctions against an attorney and his client for a course of claimed bad faith and harassing litigation where there is no specific rule or order of the court that the plaintiff is CT Page 10359 claimed to have violated.
Id. at 359. For the following reasons, the Court concluded that "subject to appropriate limitations the Court has such authority." Id.
"This State", the Court observed,
 follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." [Citations omitted.] That rule does not apply, however, "where the opposing party has acted in bad faith." [Citation omitted.] It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.
[Citations omitted.] This bad faith exception applies not only to the filing of an action, "but also in the conduct of the litigation." [Citations omitted.] It applies both to the party and its counsel. [Citation omitted.]
Id. at 361. (Emphasis supplied.) The Court went on, however, to declare that in determining whether or not a party should be subject to sanctions under the trial court's "inherent power to impose attorney's fees for engaging in bad faith litigation practices," the trial court "must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or it wilful violations of court orders; `the appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation.'" Id. at 361. At the conclusion of such an inquiry, sanctions can properly be imposed whenever the trial court makes "a specific finding," based on "clear evidence," that "the challenged actions `are entirely CT Page 10360 without color and [are taken] for reasons of harassment or delay or for other improper reasons[.]'" Id.
In this case there is no doubt whatsoever that the plaintiff's lawyer's conduct was "entirely without color", for even he, when confronted with his wrongdoing, declined to defend it. However, as the Court initially declared when it granted the defendant's motion for a mistrial, such conduct obviously stemmed from Attorney Hanks' youth and inexperience rather than from any desire on his part to gain an unfair advantage over his opponent. The Court must therefore conclude that in the absence of "clear evidence" that Mr. Hanks engaged in the challenged conduct "for reasons of harassment or delay or for other improper reasons", id., the defendant's application for costs and/or sanctions must be denied.
It is so ordered this 7th day of October 1994.
Michael R. Sheldon Judge