CITY OF ROCKVILLE *v.* PUBLIC UTILITIES
COMMISSION ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 9—decided December 2, 1958

1

2

*Harry Hammer,* with whom, on the brief, was *J. Donald Shannon,* for the appellant (plaintiff).

*Ernest A. Inglis, Jr.,* for the appellees (defendant Rockville Water and Aqueduct Company et al.).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellee (named defendant).

DALY, C. J. The Rockville Water and Aqueduct Company, hereinafter referred to as the Rockville company, and Suburban Water Service, Inc., hereinafter referred to as the holding company, by a joint application dated April 30, 1957, requested approval by the defendant commission of the acquisition by the holding company of not less than 51 per cent of the capital stock of the Rockville company. The commission, after a public hearing, found that the proposed acquisition would not adversely affect the public interest and might improve and make more efficient the service rendered by the Rockville company. The commission approved the application. The city of Rockville appealed to the Superior Court, which dismissed the appeal. This appeal from the judgment of the Superior Court was taken by the city.

The Rockville company, a public service corpora-

tion organized under the laws of this state, is authorized by its charter, as amended, to supply the towns of Ellington, Tolland and Vernon, including the city of Rockville, with an abundant supply of pure water for household, fire and other purposes. 11 Spec. Laws 27; 13 id. 705. It obtains its entire water supply for these purposes from Lake Shenipsit in Tolland County. The Connecticut Water Company is a public service company organized under the laws of this state and is empowered to supply water in the towns of East Windsor, South Windsor, Enfield, Windsor Locks and other communities near the franchise area of the Rockville company. 24 Spec. Laws 741; 28 id. 404. The majority of the stock of the holding company is owned by the owners of a majority of the stock of the Connecticut Water Company. The holding company, organized under the laws of this state, is not authorized to engage in the business of a public service company. The regulations controlling it appear in General Statutes § 5438.[1]

The authorized capital stock of the Rockville com-

---

[1] "Sec. 5438. HOLDING COMPANIES. As used in this section, 'holding company' shall mean any corporation, association or person which, either alone or in conjunction and pursuant to an arrangement or understanding with one or more other corporations, associations or persons, directly or indirectly, controls a gas, electric or water company. No gas, electric or water company, or holding company, or any official, board or commission purporting to act under any governmental authority other than that of this state or of its divisions, municipal corporations or courts, shall interfere with or attempt to interfere with or exercise authority or control over any gas, electric or water company incorporated by this state and engaged in the business of supplying service within this state, or with or over any holding company incorporated by this state and doing the principal part of its business within this state, without having first obtained the approval of the commission, except as the United States may properly regulate actual transactions in interstate commerce. Any action contrary to the provisions of this section shall be voidable on order of the commission."

pany consists of 5000 shares of common stock of the par value of $25 per share, all of which have been issued and are outstanding. The holding company has offered to all owners of stock of the Rockville company who are residents of this state three shares of preferred stock in the holding company in exchange for each share of stock in the Rockville company. All such owners, representing 4150 shares of stock in the Rockville company at the time the commission held the hearing upon the application, accepted the offer of the holding company. Other owners, residing outside this state, also agreed to participate.

By special act of the General Assembly in 1957, the city of Rockville was authorized to acquire and operate the Rockville company at such time as the city decided to purchase it. 28 Spec. Laws 891.

In its appeal to the Superior Court, the city claimed that the commission's construction of § 5438 was erroneous in law; that, on the basis of the record, the Rockville company, as a consequence of the granting of the application, will obligate itself to sell water from its supply to the Connecticut Water Company; that the obligations of the Rockville company to the city and its inhabitants, and to other communities within the franchise area, are likely to be impaired; that the order will secure to the Connecticut Water Company an additional source of water supply, in spite of the fact that specific procedures for implementing water supplies are prescribed by statute; and that no compensating benefits to the patrons of the Rockville company are provided.

The city in its brief states that the question presented is the following: "Under the provisions of Section 5438 of the General Statutes, should the

Public Utilities Commission approve the exercise of control by a holding company over an operating water company where the primary purpose of the transaction is to provide an additional source of water supply for another operating water company outside the franchise area of the applicant operating company?" In its assignment of errors, the city alleges that the court erred in holding that the finding and order of the commission did not constitute an allocation of water to the Connecticut Water Company and in sustaining the commission's finding that the sale of water by the Rockville company to the Connecticut Water Company would not be detrimental to the residents of the franchise area of the Rockville company. Section 5427 of the General Statutes provides in part: "The [public utilities] commission shall forthwith, after service of notice of any appeal, prepare and file, in the court to which such appeal is taken, a copy of such portions of the record of the case from which such appeal has been taken as may appear to the commission to be pertinent to such appeal . . . certified by the secretary or assistant secretary of the commission. The court, upon such appeal, shall review, upon the record so certified, the proceedings of the commission and examine the question of the legality of the order, authorization or decision appealed from and the propriety and expediency of such order, authorization or decision so far as said court shall have cognizance of such subject and shall proceed thereon in the same manner as upon complaints for equitable relief." Upon such an appeal, the only question before the court is whether the commission acted illegally or in excess or abuse of its powers. *Coppola v. New York, N.H. & H.R. Co.*, 143 Conn. 109, 112, 119 A.2d 730; *Brook Ledge, Inc. v. Public Utilities*

*Commission,* 145 Conn. 617, 619, 145 A.2d 590. In the absence of a finding by the court, we turn to its memorandum to ascertain the legal conclusions upon which it based its judgment. *State ex rel. Haverback* v. *Thomson,* 134 Conn. 288, 291, 57 A.2d 259.

From the memorandum of decision, it appears that the court concluded the following: The application is only for approval of the sale of stock in the Rockville company; it in no way changes the corporate structure of the company and does not concern any change in the business conducted by it. It is contemplated that the Rockville company may become more aggressive in the expansion of its facilities. The city doubts whether the Rockville company, under its charter, can sell excess water to the Connecticut Water Company. If the Rockville company agrees to sell excess water to the Connecticut Water Company and if the city or any aggrieved person claims that to do so is illegal, an action for injunctive relief can be brought against the Rockville company, whoever owns its capital stock. The holding company has indicated that, if it does get control, the Rockville company will, no doubt, enter into a contract for the sale of surplus water to the Connecticut Water Company. From the evidence presented at the hearing, the commission could reasonably find that, if such a sale is made, an abundant water supply will still be available for users and contemplated users in the franchise area of the Rockville company for the foreseeable future, as required by the rule stated in *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 369, 85 A. 636, and followed in *Greenwich* v. *Greenwich Water Co.,* 145 Conn. 526, 532, 144 A.2d 318. The commission could find that there is a safe, dependable yield of 13 million gallons of water per

day from the reservoir and that the present average daily need for the franchise area is about 1 million gallons, with a probable maximum average daily need of 5 million gallons in 1967 if the area develops as the city claims it will. The commission did not allocate water to the Connecticut Water Company. The commission recognized that, if the proposed stock transfer is made, water probably will be sold to be consumed in an area where it will be needed and that such a sale would discourage waste and promote the judicious use of water without detriment to the residents in the franchise area. By its order, the commission in no way relinquished any powers it now has or may have in the future. See *Greenwich* v. *Greenwich Water Co.,* supra.

It is true, as asserted by the city, that § 5401 of the General Statutes states that one of the general purposes of it and other sections, including § 5438, is "to promote local control of the public service corporations of this state." In the instant case, however, the only definite offer to purchase the shares was made by the holding company. Section 5401 does not provide that the transfer of control can be made only to the inhabitants of the franchise area.

The commission did not act illegally or in excess or abuse of its powers, and, consequently, the court did not err in dismissing the plaintiff's appeal.

There is no error.

In this opinion the other judges concurred.