THE NOROTON WATER COMPANY *v.* PUBLIC UTILITIES
COMMISSION

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 114772
AT BRIDGEPORT

Memorandum filed March 2, 1962 [1]

*Hirschberg, Pettengill & Strong,* of Greenwich,
for the plaintiff.

*Albert L. Coles,* attorney general, *Louis Wein-
stein* and *Samuel Kanell,* assistant attorneys gen-
eral, for defendant Public Utilities Commission.

DEVLIN, J. On November 17, 1960, the plaintiff
filed a petition with the public utilities commission
proposing higher rates for water service, to become
effective on December 1. The new tariff increased

---

[1] Publication of this decision was determined upon after an ap-
peal to the Supreme Court of Errors was withdrawn.

all rates by 30 percent and was the first general increase since the year 1938. By letter dated November 21, 1960, the commission suspended the effective date of the proposed increase pending investigation and further order. On January 9, 1961, a public hearing was held in Hartford at which four witnesses testified on behalf of the company; there were no appearances in opposition, and no formal protests were filed. On March 24, 1961, the commission filed an order approving the amount of annual revenues required to provide for operating expenses, depreciation and taxes and to service the company's long-term debt and preferred stock, but disapproved a substantial portion of the amount required to provide a claimed adequate return on the common-stock equity. On April 7, 1961, the plaintiff filed a schedule of rates and charges in substantial compliance with this order, and this appeal followed. Subsequently, it filed an application to vacate the supersedeas in order that it might be permitted to obtain the higher rates authorized pending the appeal. Upon agreement of the parties, this motion was granted.

There is no question in this case as to the rate base or the amount of return which will be provided by the rates under review. The only issue is the reasonableness of the rate of return allowed by the commission. The plaintiff claims there is no evidence in the record to support it, that the return allowed is far below the level required to maintain the financial integrity of the company and to provide a just and adequate return on its common-stock equity, and that in failing to grant the relief sought the commission acted arbitrarily, illegally and in abuse of its discretion.

The agreed-upon rate base was $1,201,500. With operating revenues of $241,040, the operating in-

come on this base under the existing rates showed a rate of return of 3.89 percent. Under the proposed rates, providing operating revenues of $313,425, the rate of return would be 6.99 percent. On the schedule granted by the commission, providing operating revenues of $275,400, the rate of return would be 5.5 percent. The chief difference revolves around the failure of the commission to provide more than $36,000 as net income available on the common-stock equity. The plaintiff contends the rate of return must be no less than 10.5 percent or $49,600, and no more than 11 percent or $51,952, and that the requested figure of $50,000 was reasonable and proper.

The record shows that the company has outstanding bank loans in the amount of $345,000 and plans to repay these by the issuance of first mortgage bonds in the amount of $185,000 and 6400 additional shares of common stock at $25 par value. Granting the rates requested would provide a return of over 17 percent on the company's common equity. This equity consists of presently outstanding capital stock, 7485 shares at $25 par value, and surplus of about $125,000. After issuance of the additional stock, the return on the equity would be 11.43 percent.

In support of its claim, plaintiff submitted ten-year average earnings-price ratios of nine well-known water companies, much larger than the plaintiff, showing an average return of 8.49 percent, which would give it an equity of at least $40,100 in contrast to the $36,000 allowed. It was also argued that in view of the size of the company no ready market could ever exist for its stock and an investor would require a substantially greater return than he could obtain in the common stocks of water utilities which are readily marketable. Items

also considered were the cost of new financing, including legal, printing, and issuing expenses and taxes, and the factor of market pressure which tends to depress the market price of the stock being issued and increases earnings-price ratios by 10 to 15 percent.

The commission found that earnings at this high rate were more than were necessary or required to maintain the financial stability and to provide properly for public convenience, necessity and welfare. In denying the application, the commission authorized rates which would provide additional revenues of $34,400 annually, and leave remaining the sum of $36,000 as a return on common equity. This is equivalent to earnings at the rate of 11.5 percent on the present common equity or 7.6 percent after issuance of the new shares.

The commission was not bound to accept the testimony of the plaintiff's expert that a higher return on equity was necessary in order to facilitate the sale of the proposed new common stock. It was entitled to weigh the evidence and determine its credibility. *Conley* v. *Board of Education,* 143 Conn. 488, 492. It was also entitled to consider that the plaintiff is a wholly owned subsidiary of The Greenwich Water System, Inc., which in turn is a subsidiary of the American Water Works Company, Inc., and that 60 percent of the latter company is owned by the Northeastern Water Company. Thus, the problem confronting the plaintiff in the sale of new stock is necessarily different from that of other utilities which are publicly owned.

Claim is also made that there was no lawful reason given for reducing the return on the common-stock equity; that income coverage, dividends on par value and payout ratios with respect to par value are not a standard for judging the reasonable-

ness of return; and that a rate of return on a rate base of 5.5 percent is a purely arbitrary figure.

Under General Statutes § 16-19, the question before the commission was to determine whether the proposed rates were "unreasonably discriminatory or more or less than just, reasonable and adequate to enable such company to provide properly for the public convenience, necessity and welfare," and to "determine and prescribe . . . just and reasonable maximum rates and charges to be made by such company." In dealing with the problem, the question of reasonableness must be reached with regard to the effect both upon the company and the public. The rates must not be so low as to be confiscatory or so high as to exceed the value of the service to the consumer. No general definition of what is reasonable can be given. *Turner* v. *Connecticut Co.*, 91 Conn. 692, 698. The nature and scope of the inquiry is such that the question of what constitutes a reasonable rate is primarily a question of fact, depending largely upon the circumstances of the particular case. *New Haven* v. *New Haven Water Co.*, 118 Conn. 389, 402. The commission is not bound by any single formula or rule in determining rates. Under the statutory standard of "just and reasonable," it is the result reached, not the method employed, which is controlling. The fact that the method employed to reach that result may contain infirmities is not then important. *Federal Power Commission* v. *Hope Natural Gas Co.*, 320 U.S. 591, 602.

Sufficient facts were incorporated to negative any claim that the prescribed rates were confiscatory. On the contrary, they would be ample to meet all reasonable operating expenses, including taxes and depreciation, and to properly service all outstanding securities. They were sufficient to afford suf-

ficient earnings to pay dividends on both the present and proposed new stock at the rate of at least 6 percent and leave a balance of over $15,000 available to go to surplus. The court upon an appeal of this type does not retry the case but determines from the record certified by the commission whether it has acted illegally, arbitrarily or in abuse of its statutory powers. *Rockville* v. *Public Utilities Commission,* 146 Conn. 1, 5. The determining factor is not whether opposition is recorded at the hearing but whether there is sufficient evidence to support a finding that the proposed rates are just and reasonable. "At any hearing involving a rate, the burden of proving that a rate under consideration is just and reasonable shall be on the public service company." General Statutes § 16-22.

The plaintiffs have failed to sustain this burden and the appeal is dismissed.