HARTFORD ELECTRIC LIGHT COMPANY *v.* WATER
RESOURCES COMMISSION ET AL.

THIM, RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued October 8—decided December 22, 1971

*Bourke G. Spellacy,* with whom were *Stuart N. Updike* and *Charles F. Corcoran,* for the appellant-appellee (defendant Public Utilities Commission).

*Walter F. Torrance, Jr.,* with whom, on the brief, were *H. Bissell Carey, Jr.,* and *Edmund W. O'Brien,* for the appellant-appellee (plaintiff).

*Thomas F. Parker,* for the appellee-appellant (named defendant).

*Julian D. Rosenberg,* for the appellee-appellant (defendant Cynthia B. Carlson) and as amicus curiae on behalf of Connecticut Valley Action Committee, Inc.

THIM, J. This appeal concerns the conflicting claims of jurisdiction of two state regulatory agencies as to the granting of permits for the erection of power transmission lines over navigable rivers in

the state of Connecticut. The material facts are as follows: Prior to December, 1965, the plaintiff, the Hartford Electric Light Company, hereinafter called HELCO, determined that in connection with the utilization of electric power to be produced at a power plant in Haddam, it would be necessary to construct two 345-KV transmission lines for the purpose of transmitting the electricity produced. The construction of these high-voltage lines would require the crossing of the Connecticut River at three locations. At each of the three crossings, two large steel towers would be constructed to support the lines, one on each side of the river. Eight separate cables would be strung across the river at each of the three crossings. None of the cables or supporting structures would be physically in the waters of the Connecticut River, the cables having a minimum clearance of 111 feet. In January, 1966, HELCO notified the defendant, the Public Utilities Commission, hereinafter called the P.U.C., of the proposed construction. In January, 1966, HELCO applied to the defendant, the Water Resources Commission, hereinafter called the W.R.C., for permission to construct the lines. After appropriate notice and hearing, the P.U.C., on June 23, 1966, approved the HELCO application. On the same day, after notice and hearing, the W.R.C. also approved the HELCO application. While the P.U.C. certificate did not attach any condition to its issuance, Certificate No. 2444 issued by the W.R.C. did contain a condition.[1] On July 6, 1966, HELCO appealed to the

[1] "2. The overhead transmission lines constructed under this Certificate shall be removed and placed under water at the present location or constructed at some other alternate location within five years from the date of issuance of this Certificate, and the existing overhead crossings adjacent to those proposed shall be removed during the same period."

Superior Court with respect to the condition. The W.R.C. filed a plea in abatement to the appeal, claiming that the appeal was not authorized by statute. Although the plea was sustained *(Tedesco, J.)*, HELCO was allowed to amend its complaint to seek relief by way of a declaratory judgment.[2] Cynthia B. Carlson was the owner of a twenty-five-acre tract of residentially zoned land on the west bank of the Connecticut River which faced the two 345-KV transmission line towers and an earlier-erected 115-KV transmission line tower. She and the P.U.C. were allowed to enter this action as party defendants. The Connecticut Valley Action Committee, Inc., was granted permission to file a brief as amicus curiae. While the trial court *(Barber, J.)* held that the W.R.C. had jurisdiction of the subject-matter embraced in its certificate, and that the condition attached to the W.R.C. certificate did not exceed the W.R.C.'s jurisdiction and authority, the trial court concluded that the condition was illegal in that it was not supported by an adequate record and finding of the W.R.C. From the judgment rendered by the trial court all parties have appealed to this court.[3]

The central issue is whether the trial court was correct in concluding that the W.R.C., rather than the P.U.C., had jurisdiction to grant permits for placing overhead lines across navigable rivers. Both the P.U.C. and W.R.C. claim that they have been delegated this jurisdiction by the legislature. The claim of the P.U.C. is based on five sections of the

---

[2] The ruling of the trial court sustaining the plea in abatement is not before us and, therefore, we cannot express an opinion concerning it.

[3] At the time of the trial, the 345-KV transmission lines had been constructed as proposed. We also note that the five-year period, at the end of which the lines in question were to be removed, has since expired.

General Statutes pertaining to public service companies.[4] These statutory provisions were all part of the Public Utilities Act of 1911 as originally enacted or the additions thereto. Being a body created by the General Assembly, the powers of the P.U.C. are limited to those given to it by its creator. *Southern New England Telephone Co. v. Public Utilities Commission,* 144 Conn. 516, 523, 134 A.2d 351; *John J. McCarthy Co. v. Alsop,* 122 Conn. 288, 189 A. 464. The five relevant sections in title 16 of the General Statutes give the P.U.C. broad powers, the scope of which has been recognized by this court. In *Connecticut Co. v. Norwalk,* 89 Conn. 528, 533, 94 A. 992, this court, in describing the Public Utilities Act of 1911, stated that the Act was "broad in its sweep, extensive in the jurisdiction conferred, and far-reaching in the supervision of public service corporations and the control over public and private interests." See also *Jennings v. Connecticut Light & Power Co.,* 140 Conn. 650, 661, 103 A.2d 535. After carefully analyzing all relevant statutory authority, however, we find no merit to the claim that the legislature has delegated exclusive jurisdiction over the location of transmission lines over navigable rivers to the P.U.C.

Section 16-243, "Jurisdiction of commission [P.U.C.] over electricity transmission lines," is heavily relied on by the P.U.C. in support of its argument. This court realizes that the transmission of electricity, especially the underground construction of transmission lines, is highly technical, so that the control of plants and lines should be under the supervision of a statewide agency. *Jennings v. Connecticut Light & Power Co.,* supra, 660. "In delegating exclusive jurisdiction over the construction and

---

[4] General Statutes §§ 16-11, 16-18, 16-234, 16-235, 16-243.

reconstruction of facilities for the transmission of electricity to the public utilities commission (§ 16-243), the General Assembly obviously recognized the desirability that an agency with statewide jurisdiction and with expertise in the field have exclusive power and responsibility in such area." *Gimbel* v. *Loughlin,* 28 Conn. Sup. 72, 78, 250 A.2d 329.

It is clear that § 16-243 confers on the P.U.C. exclusive jurisdiction over technical matters such as the quality and finish of the materials, wires, poles, conductors, fixtures and the method of their use. It further grants to the P.U.C. exclusive jurisdiction over the location of transmission lines on private property. "Exclusive jurisdiction and direction of such lines erected on private property is in the public utilities commission by virtue of § 16-243. See *Jennings* v. *Connecticut Light & Power Co.,* . . . [140 Conn. 650, 663–64, 103 A.2d 535]." *Connecticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 444, 288 A.2d 415. The statutory language, however, is explicit in confining this jurisdiction over the location of transmission lines to situations involving "private property." In that the case at bar involves the erection of transmission lines over navigable rivers, § 16-243 does not govern the situation. Nor do we interpret the *Jennings* and *Costello* cases as supporting the principle that the P.U.C. has exclusive jurisdiction over the location of transmission lines over navigable rivers.

Section 16-235 confers some measure of local control over the location of structures and apparatus of public service companies, and grants to the P.U.C. an appellate jurisdiction "to affirm or modify or revoke such orders" of local authorities. The P.U.C. argues that, read in conjunction with *Jennings* v.

*Connecticut Light & Power Co.,* supra, the P.U.C.'s authority supersedes not only that of local agencies, but state agencies as well. While we held in the *Jennings* case (p. 663) that "as between state control and local control of a public utility . . . the local municipal authorities should play a secondary role where a clash of authority appears to exist," this does not apply to a clash between the P.U.C. and the W.R.C., the latter also being a state regulatory agency, not a local municipality. Similarly, the other statutes relied on by the P.U.C. do not confer jurisdiction on the P.U.C. to govern the location of transmission lines over navigable rivers. We do note and emphasize that our decision in this case is in no way meant to diminish any powers of the P.U.C. as expressed by statute or case law including *Algonquin Gas Transmission Co.* v. *Zoning Board of Appeals,* 162 Conn. 50, 291 A.2d 204. In the *Algonquin* case, supra, it was expressly stated that the jurisdiction of the P.U.C. over location was subject to be superseded by other statutory enactments.

HELCO contends that it has been granted a franchise by the legislature to erect and maintain its facilities on or over highways. In that navigable rivers are equated to highways, they argue that their charter, therefore, gives them the authority to place transmission lines over navigable rivers as well. After careful analysis of Special Acts 1899, No. 289, an act "Incorporating The Marine Power Company," the forerunner of HELCO, we find no merit to this contention. A franchise granted by the legislature does not carry with it the absolute right to place its installations where it pleases and without proper regulation. *State* v. *Towers,* 71 Conn. 657, 667, 42 A. 1083. Franchises are subject to the interests of the general public as expressed in general regulatory

statutes. *Delinks* v. *McGowan,* 148 Conn. 614, 623, 173 A.2d 488.

We now turn to the delegated powers of the W.R.C. to determine the extent of its jurisdiction. Prior to 1963, the W.R.C., a regulatory agency, was granted certain power by the legislature over the use and obstruction of navigable waters.[5] Under § 25-7, while no obstruction or encroachment could be placed in the water until a certificate had been secured from the W.R.C., the certificate had to be issued unless the W.R.C. found an adverse effect on (1) navigability, (2) any right of the state or (3) increased hazards from flood waters. The W.R.C. concedes, and rightly so, that under § 25-7, it would have to issue the certificate in the case at bar for the construction of the lines because the lines would not fall within the above three categories. In 1963, § 25-7 was repealed and replaced by §§ 25-7b and 25-7d.[6] The outcome of the issue of jurisdiction will depend on whether §§ 25-7b and 25-7d have revised and broadened the powers of the W.R.C.

The P.U.C. and HELCO contend that the new

---

[5] "[General Statutes] Sec. 25-7. USE OR OBSTRUCTION OF NAVIGABLE WATERS. CERTIFICATE. No person, firm or corporation, public, municipal or private, nor any public agency shall undertake the use of any of the navigable waters located within or partially within the state, or place any obstruction or encroachment in such waters until such person, firm, corporation or agency has secured from said commission a certificate to the effect that such use, or the construction of such obstruction or encroachment, will have no adverse effect upon the navigability of any stream or watercourse within this state, or on any right of the state, and that such use or obstruction or encroachment will not increase the hazard of damage to life or property by reason of flood waters. No provision of this chapter shall apply to the waters of New Haven harbor as defined by statute."

[6] "[General Statutes] Sec. 25-7b. REGULATION OF ERECTION OF STRUCTURES IN TIDAL, COASTAL OR NAVIGABLE WATERS. The water resources commission shall regulate the erection of structures, and work incidental thereto, in the tidal, coastal or navigable waters of

statutes merely clarify § 25-7 so that unless the encroachment adversely affects (1) navigability, (2) any interest of the state or (3) increases hazards from flood waters, the W.R.C. has no jurisdiction. The defendants Carlson and the W.R.C. argue that the scope of regulation and criteria has been enlarged by the repeal of § 25-7, containing these three criteria, and by the enactment of §§ 25-7b and 25-7d containing an expanded list of new criteria. Statutes are to be construed in light of their legislative history, their language, the purpose they are to serve, and the circumstances surrounding their enactment. *Connecticut Light & Power Co.* v. *Sullivan,* 150 Conn. 578, 581, 192 A.2d 545; *Mack* v. *Saars,* 150 Conn. 290, 294, 188 A.2d 863; *Oppenheimer* v. *Connecticut Light & Power Co.,* 149 Conn. 99, 102, 176 A.2d 63. In delving into the history of §§ 25-7b and 25-7d, the P.U.C. and HELCO offer the formal advice of the attorney general and excerpts from senate and house proceedings of the legislature.

---

the state with due regard for the prevention or alleviation of shore erosion, the use and development of adjoining uplands, the improvement of coastal and inland navigation for all vessels, including small craft for recreational purposes, the use and development of adjacent lands and properties and the interests of the state, including pollution control and recreational use of public waters, with proper regard for the rights and interests of all persons concerned.

. . . . .

"Sec. 25-7d. PERMIT FOR ERECTION OF STRUCTURE. No person, firm or corporation, public, municipal or private, shall erect any structure, place any obstruction or encroachment or carry out any dredging or other work incidental thereto in the tidal, coastal or navigable waters of the state until such person, firm or corporation has submitted an application and has secured from said commission a certificate or permit for such work and has agreed to carry out any conditions necessary to the implementation of such certificate or permit. . . . The commission may adopt, revise and amend regulations and procedures appropriate to carry out the provisions and enforcement of sections 25-7b to 25-7f, inclusive, in the public interest."

While relevant to our inquiry, they are by no means conclusive in determining legislative intent. *Harris v. Planning Commission,* 151 Conn. 95, 100, 193 A.2d 499; *Sullivan v. Town Council,* 143 Conn. 280, 286, 121 A.2d 630. As to occurrences at legislative public hearings, these are not admissible as a means of interpreting a legislative act and may not be considered. *Charlton Press, Inc. v. Sullivan,* 153 Conn. 103, 111, 214 A.2d 354; *Baker v. Norwalk,* 152 Conn. 312, 316, 206 A.2d 428. While the title of an act may be considered; *Cedar Island Improvement Assn. v. Clinton Electric Light & Power Co.,* 142 Conn. 359, 370, 114 A.2d 535, *Baker v. Baningoso,* 134 Conn. 382, 387–88, 58 A.2d 5; it is not conclusive, and it is of little importance compared with the text. *Mad River Co. v. Wolcott,* 137 Conn. 680, 687–88, 81 A.2d 119.

While many considerations are relevant to legislative intent, "[w]e cannot speculate upon any intention not appropriately expressed in the language of the act itself." *Mad River Co. v. Wolcott,* supra, 688; *Loew v. Falsey,* 144 Conn. 67, 72, 127 A.2d 67; *McManus v. Jarvis,* 128 Conn. 707, 711, 22 A.2d 857. Legislative intent is to be found, not in what the legislature meant to say, but in the meaning of what it did say. *Schwab v. Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506; *Connecticut Light & Power Co. v. Sullivan,* supra. Thus, the intent of the legislature, as expressed, is the controlling factor above all others. *Knoll v. Kelley,* 142 Conn. 592, 596, 115 A.2d 678. Looking, therefore, at what was actually expressed, we find that under the repealed § 25-7 only three criteria were to be considered by the W.R.C.: the adverse effect on (1) navigation, (2) any interest of the state or (3) increased hazards from flood waters. By

eliminating the language containing the three criteria and by enacting §§ 25-7b and 25-7d containing new criteria, the legislature indicated that the W.R.C. was to be less restricted than under the prior statute in determining whether permits to invade the realm of our navigable rivers should be granted. Courts must presume that there was a purpose for including only three criteria in the repealed section. *State* v. *Springer*, 149 Conn. 244, 248, 178 A.2d 525; *McAdams* v. *Barbieri*, 143 Conn. 405, 419, 123 A.2d 182. Conversely, we believe that there must be a purpose for leaving the old criteria out of the new statutes. In changing the language when enacting §§ 25-7b and 25-7d, there is a presumption that the legislature intended a change in meaning. *Pierce* v. *Albanese*, 144 Conn. 241, 247, 129 A.2d 606; *State ex rel. Markley* v. *Bartlett*, 130 Conn. 88, 93, 32 A.2d 58. That the legislature had a purpose and intended a change in meaning is clear. The intent was to enlarge the criteria from the restrictive three in § 25-7 to the expanded criteria in §§ 25-7b and 25-7d. In an age of growing concern over the quality of our water resources and their recreational uses, the W.R.C. has been delegated authority to grant or deny permits after considering such criteria as the use and development of adjoining uplands, pollution control, and, more especially, recreational use. No longer is the W.R.C. to be limited to the restrictive criteria of the repealed § 25-7. The legislative intent of the General Assembly is clear. If there is an encroachment in the navigable waters of the state, the W.R.C. has jurisdiction.

Section 25-7d states that no person "shall erect any structure, place any obstruction or encroachment . . . in the tidal, coastal or navigable waters of the state," unless the W.R.C. issues a permit. Any structure,

obstruction or encroachment placed in the water without a permit from the W.R.C. will be considered a public nuisance. § 25-7e. The W.R.C. contends that the lines are an "encroachment" and "in" the tidal waters, and thereby subject to W.R.C. regulation.

In construing the terminology of a statute, "[t]he intent of a statute is to be sought first in the language used, and if that is unambiguous we need not resort to other aids of interpretation." *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886; *Johnson* v. *Board of Tax Review,* 160 Conn. 71, 73, 273 A.2d 706. Since the word "encroachment" is not defined, § 25-7d is ambiguous and we must, therefore, look elsewhere for the meaning of the word. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language." General Statutes § 1-1; *State* v. *Benson,* 153 Conn. 209, 214, 214 A.2d 903. "Or, stated another way, statutory language is to be given its plain and ordinary meaning." *Klapproth* v. *Turner,* supra; *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362. Black's Law Dictionary (Rev. 4th Ed.) defines "encroachment" as a "fixture . . . which illegally intrudes into or invades the highway or encloses a portion of it." Webster's Third New International Dictionary defines "encroachment" as the "act or action of encroaching." The word "encroach" means "to enter . . . by stealth into the possessions or rights of another." To be an illegal intrusion, it is not necessary that an encroachment obstruct. As the trial court correctly observed, "[i]t is significant that the statute contains the word 'encroachment' in addition to the words 'structure' and 'obstruction.'" To construe the word "encroachment" also to mean "obstruction" would violate an

elementary principle of statutory construction that a statute should be construed so that "[n]o word in a statute should be treated as superfluous . . . or insignificant." *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732; *Archibald* v. *Sullivan,* 152 Conn. 663, 668, 211 A.2d 692.

At common law, an intrusion into public waters or harbors without permission was deemed an encroachment. The United States Supreme Court in *Weber* v. *Board of Harbor Commissioners,* 85 U.S. 57, 65, 21 L. Ed. 798, said: "[T]he title to the shore of the sea, and of the arms of the sea, and in the soils under tidewaters is . . . in this country, in the State. Any erection thereon without license is, therefore, deemed an encroachment upon the property of the sovereign . . . which he may remove at pleasure, whether it tend to obstruct navigation or otherwise." See also *State* v. *Kean,* 69 N.H. 122, 125, 45 A. 256; Angell, Tide Waters (2d Ed.), pp. 105, 198. In general, the cases defining "encroachment" involve encroachments in the highway, but since navigable rivers have been equated with highways; *Chicago, M. & St. P. Ry. Co.* v. *Minneapolis,* 232 U.S. 430, 441, 34 S. Ct. 400, 58 L. Ed. 671; *Transportation Co.* v. *Chicago,* 99 U.S. 635, 643, 25 L. Ed. 336; and the parties so concede, the analogy is relevant. *Yale University* v. *New Haven,* 104 Conn. 610, 134 A. 268, held that Yale University had no right to construct a bridge across a public highway without the municipality's permission, even though the foundations would not be within the limits of the highway, would be on land owned by the university, and the bridge would not interfere or obstruct traffic on the highway. The bridge was considered an encroachment. See also *Andrew B. Hendryx Co.* v. *New Haven,* 104 Conn. 632, 134 A. 77.

An encroachment being an illegal intrusion in a highway or navigable river, with or without obstruction, it is axiomatic that one needs permission to so intrude. *Yale University* v. *New Haven,* supra, 621. In a case affecting a navigable river, permission would be granted by the state through the W.R.C., the agency of the state to which the power to grant permission was delegated. In the present case, HELCO contends that while an encroachment is an illegal intrusion, since its charter gives it authority to span the river, there is no illegal intrusion, and, thus, no encroachment. The P.U.C. makes a similar claim in arguing that since the P.U.C. gave HELCO permission, there is no illegal intrusion, and, thus, no encroachment. Neither argument has merit in that they assume either (1) that the P.U.C. has jurisdiction to grant such permits or (2) that HELCO's charter gives HELCO the authority to erect the lines.

As to construing "in the tidal, coastal or navigable waters," we must first look to the language for the intent of the legislature. *Johnson* v. *Board of Tax Review,* 160 Conn. 71, 73, 273 A.2d 706; *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886. Since this phrase is not defined within the statute, and is ambiguous we must look elsewhere for the commonly approved, or plain and ordinary, usage of the language involved. General Statutes § 1-1; *State* v. *Benson,* 153 Conn. 209, 214, 214 A.2d 903. Black's Law Dictionary (Rev. 4th Ed.) defines "in" as an "elastic preposition . . . expressing relation of presence, existence, situation, inclusion, action." Webster's Third New International Dictionary defines "in" as "a function word to indicate location of position in space or in some materially bounded object." HELCO and the P.U.C. would have this court con-

strue the word "in" literally so that it would not apply to structures, obstructions, or encroachments "over" the river, but rather, only to structures physically in or touching the waters. This court has held, however, that we must seek a meaning which avoids a result which the legislature could not have intended even at the expense of departing from the literal meaning of the words used. *Eddy* v. *Liquor Control Commission,* 138 Conn. 564, 566, 86 A.2d 867; *Kuehne* v. *Town Council,* 136 Conn. 452, 456, 72 A.2d 474. Where a statute is open to two constructions, one of which would have an absurd consequence, a legislative intent to attain a rational result may be assumed. *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508. In the case at bar, it can be said that the legislature did not intend the result which would follow if the W.R.C.'s jurisdiction were limited to encroachments physically in the water. Clearly, a line two feet over a river would be an "obstruction" although not physically in the river. Jurisdiction, to avoid a bizarre result, would have to encompass obstructions "over" as well as "in" the river. Since the phrase "in the water" applies to all three words, "obstructions," "structures" and "encroachments," it should be given the same meaning as to all three so that jurisdiction would encompass obstructions, structures and encroachments "in" and "over" the tidal waters. Words should not be given a cramped or narrow interpretation so as to bring about bizarre results not contemplated or intended by the legislature. We hold, therefore, that transmission lines strung across a navigable river, the domain of the state, are "encroachment[s] . . . in the tidal . . . waters" for the purpose of § 25-7d so that permission for their erection must be sought from the W.R.C., to

which has been delegated the authority to grant the permit.

We note that under the repealed § 25-7, the W.R.C. had jurisdiction over encroachments in the tidal waters. While the W.R.C. was required to grant permits so long as the encroachments did not adversely affect (1) navigation, (2) any right of the state or (3) increase the hazards from flood waters, nevertheless, permits had to be sought from the W.R.C. Also, by their actions in the present case, HELCO conceded that the W.R.C. had jurisdiction. While HELCO merely notified the P.U.C. of an intent to erect the lines, the agency to which it actually submitted a petition for a permit was the W.R.C.

When HELCO appealed to the Superior Court, the W.R.C. filed a plea in abatement, pleading that no appeal was authorized by statute. The trial court *(Tedesco, J.)* held that the statutes involved granted no such right to appeal. HELCO, at that time, did not contest this ruling, but rather, with the court's permission, amended its complaint, setting forth an action for a declaratory judgment. In the present appeal, HELCO has not assigned as error the trial court's ruling that no appeal was authorized from a W.R.C. determination under §§ 25-7b and 25-7d. Nor did HELCO argue or brief this point. Consequently, we do not pass on the issue whether a right to appeal exists. In that the parties have treated this as a declaratory judgment, we will do the same.

An action for a declaratory judgment is a proper procedure in this state for determining rights in connection with the regulations of an administrative agency. *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 673, 179 A. 195; *Colonial House, Inc.* v. *Connecticut State Board of Labor Relations,* 23 Conn. Sup. 30,

176 A.2d 381. While the issue of jurisdiction, however, was properly raised by the declaratory judgment action, this issue should have been the extent of the trial court's inquiry. Being a declaratory judgment action and not an appeal, the trial court should have been concerned only with issues properly raised by such an action. It was error for the trial court to go beyond the threshold issue of jurisdiction and to determine whether Condition 2 was invalid because it was not supported by an adequate record and finding. Nor would it have been proper to discuss the question whether the agency had acted illegally, arbitrarily or in abuse of its discretion. To allow a review of the sufficiency vel non of the evidence on which the administrative board acted would be to utilize the declaratory judgment action as an appellate review, and the declaratory judgment action should not be so employed. 2 Anderson, Actions for Declaratory Judgments (2d Ed.) § 678. "It is fundamental that this type of proceeding [declaratory judgment action] cannot be used as a substitute for an appeal." *Mitchell* v. *Hammond,* 252 Ala. 81, 83, 39 So. 2d 582; see *Avery Freight Lines, Inc.* v. *White,* 245 Ala. 618, 623, 18 So. 2d 394; *Floresta, Inc.* v. *City Council,* 190 Cal. App. 2d 599, 12 Cal. Rptr. 182. While one may use the declaratory judgment procedure to interpret or determine the meaning of an administrative order, it cannot be used to review the question whether the administrative agency acted correctly or erroneously in rendering its order. *Mitchell* v. *Hammond,* supra. "[R]arely, if ever, could any court, by way of a declaratory judgment, determine that an administrative officer should exercise his discretion in a given manner." *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 34, 193 A.2d 483.

In view of the fact that the parties have discussed at length the proceedings before the W.R.C. and the P.U.C. with reference to the conclusion of the trial court concerning the validity of Condition 2, and also the public importance of the issue, we have examined the entire record, briefs, appendices and exhibits to determine whether there was ample evidence before the W.R.C. to sustain the order. Such an examination discloses evidence to support the conclusions of the W.R.C. and to warrant the W.R.C.'s order. The W.R.C. properly concluded: (1) that the proposed overhead 345-KV lines would affect the use and development of adjacent lands for some uses; (2) that the location of the lines would depreciate the value of adjacent land for some uses; (3) that the support towers would be located in a state park; (4) that the proposed development of the Connecticut River national parkway and recreation area by Congress suggests recognition of the beauty along the river and that steps would be taken towards its preservation; (5) that the overhead lines would adversely affect the beauty of the river from the viewpoint of those who use the river for recreational beauty; and (6) that the preservation of aesthetic and natural beauty is a matter of concern to the public and should be recognized as a public interest.

The trial court erroneously found that Condition 2 was illegal in that it was not supported by an adequate record and finding. It based this conclusion principally on the ground that there was "no finding by the WRC of reliability" and the record before the W.R.C. would not support such a finding regarding reliability. The issue of reliability, however, was not before the W.R.C. A detailed study of the record reveals that HELCO did not claim the underground

lines would be unreliable, but rather, based its objections to the underground proposal on other grounds. HELCO did not present the W.R.C. with any evidence which would bring the problem of reliability to the W.R.C.'s attention. Nor can we subscribe to the trial court's view that it was incumbent on the W.R.C. to assume the duty of inquiring into all possible alternatives and their feasibility. Clearly, the burden of presenting the argument on reliability was on HELCO and not the W.R.C. The court erred in considering the events at the P.U.C. hearing to determine whether the W.R.C. acted properly. To allow a court to set aside an agency's determination "upon a ground not theretofore presented . . . deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Commission* v. *Aragon,* 329 U.S. 143, 155, 67 S. Ct. 245, 91 L. Ed. 136; see *Sunray Mid-Continent Oil Co.* v. *Federal Power Commission,* 364 U.S. 137, 158, 80 S. Ct. 1392, 4 L. Ed. 2d 1623.

The function of a trial court is to look only to the materials before the agency and "to determine from the record whether the facts found by the commission are supported by the record, whether they furnish justifiable reasons for the action . . . and whether it has acted illegally or has exceeded or abused its powers." *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.,* 145 Conn. 243, 252, 140 A.2d 874; see *Molino* v. *Board of Public Safety,* 154 Conn. 368, 375, 225 A.2d 805; *State* v. *Simmons,* 153 Conn. 351, 353, 216 A.2d 632; *Wilber* v. *Walsh,* 147 Conn. 317, 320, 160 A.2d 755; *Rockville* v. *Public Utilities Commission,* 146 Conn. 1, 5, 146 A.2d 916. The trial court is not to substitute its own judgment or discretion for that of the

agency. *Gulf Oil Corporation* v. *Board of Selectmen,* 144 Conn. 61, 65, 127 A.2d 48; *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747. Utilizing these basic principles and restricting itself to the evidence before the W.R.C., a trial court would have found ample evidence to support the W.R.C.'s conclusions and to justify its order of June 23, 1966, containing Condition 2.

The W.R.C. assigned as error the trial court's conclusion that Condition 2 required HELCO to place the proposed 345-KV lines under the Connecticut River within five years at this or any other unspecified location. We hold that the trial court erred in its conclusion. The certificate issued was only concerned with lines crossing at the specific location described in HELCO's application. Condition 2 simply requires that if in five years HELCO wishes the 345-KV lines to cross the river in the same location, the lines would have to be placed underwater. If, however, HELCO did not want the lines placed underwater at that location in five years, the lines would have to be placed elsewhere, the specific location being the subject of another application. Whether the lines would have to be placed underwater at the new location would depend on a W.R.C. determination after considering the criteria of §§ 25-7b and 25-7d of the General Statutes.

HELCO also argued to the trial court that Condition 2 of the W.R.C. certificate is illegal in that it represented a taking of property rights from HELCO without due process of law and without just compensation in violation of the state and federal constitutions. The trial court determined that this contention was without merit and HELCO assigned as error the court's overruling of this claim of law. We deem it unnecessary to entertain the issue

in that HELCO has neither briefed nor argued this assignment of error and it is, therefore, abandoned. *Marquis* v. *Drost,* 155 Conn. 327, 330, 231 A.2d 527; *Bartlett* v. *Flaherty,* 155 Conn. 203, 205, 230 A.2d 436; *Monahan* v. *Montgomery,* 153 Conn. 386, 389, 216 A.2d 824. Assignments of error are also deemed to be abandoned where they are merely mentioned in the brief without any discussion of the particular issues mentioned. *Pluhowsky* v. *New Haven,* 151 Conn. 337, 345, 197 A.2d 645.

HELCO does, however, pursue in its brief that the condition as to the relocation of the existing 115-KV transmission line within five years offended procedural due process. HELCO argued that the notice of the W.R.C. hearing did not apprise them adequately of what action the W.R.C. might take concerning the existing 115-KV line.[7] HELCO contends that the existing line was not mentioned in the W.R.C.'s notice of hearing, and was not discussed before the W.R.C. other than by reference to its existence. Since lack of notice goes to the heart of jurisdiction, the issue will be entertained. Failure to give proper notice constitutes a jurisdictional defect. *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201. Such a defect would result in lack of due process of law. *Hartford Trust Co.* v. *West Hartford,* 84 Conn 646, 650, 81 A. 244. If the W.R.C. lacked jurisdiction, its determination was

---

[7] It should be noted that no one raised the issue whether notice and hearing were required by the W.R.C. when determining whether or not to issue a permit under §§ 25-7b and 25-7d. Also, the W.R.C. condition concerning the removal of the existing 115-KV transmission line, in effect, was a revocation of the earlier permit No. 2285 of November, 1964, granting permission to erect the 115-KV line. No party directly raised the issue whether notice and hearing were required before such a revocation. In that these constitutional issues were not raised, we need not discuss them.

void. *Smith* v. *F. W. Woolworth Co.*, 142 Conn. 88, 93, 111 A.2d 552.

The "fundamental reason for the requirement of notice is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought." *Slagle* v. *Zoning Board of Appeals*, 144 Conn. 690, 693, 137 A.2d 542; *Winslow* v. *Zoning Board*, 143 Conn. 381, 389, 122 A.2d 789. Adequate notice "will enable parties having an interest to know what is projected and, thus, to have an opportunity to protest." *Smith* v. *F. W. Woolworth Co.*, supra, 94. "[N]otice of a hearing is not required to contain an accurate forecast of the precise action which will be taken on the subject matter referred to in the notice. It is adequate if it fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing . . . . *Kleinsmith* v. *Planning & Zoning Commission*, 157 Conn. 303, 310, 254 A.2d 486; *Hawkes* v. *Town Planning & Zoning Commission*, 156 Conn. 207, 212, 240 A.2d 914; *Neuger* v. *Zoning Board*, 145 Conn. 625, 630, 145 A.2d 738." *Shrobar* v. *Jensen*, 158 Conn. 202, 207, 257 A.2d 806. In applying these elementary principles to the case at bar, we hold that the notice given by the W.R.C. was inadequate and insufficient to apprise all parties of possible determinations concerning the existing 115-KV transmission line.

Pursuant to an application made in January, 1966, by HELCO to the W.R.C. for permission to erect transmission lines across the Connecticut River, the W.R.C., on April 20, 1966, published a "Notice of Public Hearing." The notice informed the public that the W.R.C. would hold a public hearing to discuss and review HELCO's application for a permit

to construct the two 345-KV transmission lines. It further notified the public that the application would be considered in the light of §§ 25-7b through 25-7f. Particular reference was made to § 25-7b and the criteria within that statute which the W.R.C. was to consider. Some of the major items to be discussed at the public hearing were also listed.

Even with such a detailed notice, it is unreasonable to assume that HELCO, the applicant for the permit and the company which maintains the existing 115-KV line, would be apprised that the W.R.C. would make some determination concerning the existing line. The notice offered no hint that anything but the 345-KV lines would be discussed. The only reference to the 115-KV line was that the proposed 345-KV lines would "be located 125 feet and 365 feet southerly of an existing 115 KV line, construction of which was covered by a certificate of authorization dated November 17, 1964." This reference can only be construed to mean that the existing 115-KV line was simply a landmark by which to locate the proposed 345-KV lines. The 115-KV line was not even discussed at the W.R.C. hearing except by reference to its existence. Certainly, if the notice were adequate to suggest that removal of the 115-KV line was imminent, the merits of such a proposal would have been fully aired at the hearing. Reference in the notice was made to relevant statutory provisions, including § 25-7d. In examining § 25-7d one would find that such permits could be issued subject to an agreement "to carry out any conditions necessary to the implementation of such certificate or permit." While we hold that it was not necessary for the W.R.C. to state in the notice what conditions would have to be agreed on before the issuance of the permit, it would be unreasonable for one to

112

assume that any condition concerning the two 345-KV lines would also apply to the 115-KV line. We hold, therefore, that the W.R.C.'s April 20, 1966, "Notice of Public Hearing" violated constitutional due process in that it was an insufficient notice to the public that the granting of the permit for the erection of the 345-KV lines would include a condition requiring the later removal of the existing 115-KV transmission line.

There is error in part, the judgment is affirmed except as to the holding that the portion of Condition 2 concerning the removal of the lines constructed under this Certificate No. 2444 is illegal. The case is remanded with direction that the trial court modify the judgment and declare that the portion of Condition 2 concerning the lines constructed under Certificate No. 2444 is legal.

In this opinion the other judges concurred.